

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

———————————————

No. 07-18-00012-CV

———————————————

SUBHASH C. BATRA, M.D., APPELLANT

V.

COVENANT HEALTH SYSTEM D/B/A COVENANT MEDICAL
CENTER/COVENANT MEDICAL CENTER-LAKESIDE, APPELLEE

On Appeal from the 99th District Court
Lubbock County, Texas
Trial Court No. 2017-526,055; Honorable William C. Sowder, Presiding

October 9, 2018

## OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Subhash C. Batra, M.D., filed this interlocutory appeal from the trial court's supplemental order granting the motion to dismiss with prejudice filed by Appellee, Covenant Health System d/b/a Covenant Medical Center/Covenant Medical Center-Lakeside (Covenant), pursuant to the provisions of the Texas Citizens Participation Act.

*See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001-.009 (West 2015).[1]  By his original and reply briefs, Dr. Batra presents two issues challenging (1) the trial court's failure to issue findings of fact and conclusions of law and (2) the trial court's order granting Covenant's motion to dismiss.  More specifically, by his second issue, Dr. Batra questions whether (1) his claims or causes of action regard a matter of "public concern" that relates to the exercise of the right of free speech; (2) he presented clear and specific evidence of a prima facie case for each essential element of his various claims; and (3) Covenant established an affirmative defense to any or all of those claims by a preponderance of the evidence.  In his *Summary of the Argument*, Dr. Batra also challenges the trial court's award of attorney's fees to Covenant and the imposition of sanctions against him which, although not presented as separate issues,[2] will be addressed in this opinion.  Upon consideration of each issue, we affirm.

BACKGROUND

Dr. Batra is a gastroenterologist who had credentials to practice at Covenant and its facilities from 1995 until 2016.  In 2013 and 2014, certain Covenant staff members made allegations against him related to patient care.  He was temporarily suspended while an investigation was conducted.  Ultimately, he was exonerated of the allegations and his medical staff privileges were restored.[3]

---

[1] Unless otherwise shown, all further references to "section" or "§" in this opinion are references to the Texas Civil Practice and Remedies Code Annotated (West 2015).

[2] We will address the attorney's fee question as issue three and the sanctions question as issue four.

[3] The Texas Medical Board also conducted an investigation and dismissed the complaint against Dr. Batra "based on the information presently available."

As is customary in the medical profession, physicians are required to periodically apply for the renewal of medical staff privileges at hospitals where they perform their medical services. In August 2015, Dr. Batra applied for renewal of his privileges at Covenant. Covenant's Credentialing Committee recommended to the Medical Executive Committee, however, that the renewal of his privileges be denied. Dr. Batra claimed the decision was made without notice and an opportunity to be heard, in violation of the Medical Staff Bylaws.[4] Covenant's Chief of Staff then re-initiated the original allegations and added two new allegations concerning patient safety. This time the Medical Executive Committee provided Dr. Batra sufficient notice and an opportunity to be heard.

In September 2015, based in part on the newly-included allegations, the Medical Executive Committee again recommended that Dr. Batra's medical staff privileges be denied. Pending a review hearing before the Fair Hearing Panel (another procedural safeguard provided by the Medical Staff Bylaws), Dr. Batra was granted temporary privileges in accordance with standard procedures. Based on the Medical Executive Committee's recommendation, a Fair Hearing Panel was formed for the purpose of reviewing some of Dr. Batra's patient cases. At the hearing, the Medical Executive Committee was represented by its attorney, Ben Davidson. Dr. Batra also had legal representation and both sides presented witnesses.

The two cases the Medical Executive Committee used to justify denial of Dr. Batra's privileges involved the quality of patient care and a breach of patient

---

[4] Medical Staff Bylaws (to be distinguished from Covenant's hospital bylaws) were adopted to provide a framework for self-governance of the medical staff at Covenant in order to more effectively discharge its responsibilities in matters involving quality patient care, treatment, services, and safety.

3

confidentiality. The first allegation was that Dr. Batra failed to timely allow intervention by an anesthesiologist in order to intubate a patient with a cardiac condition when there was a critical change in her vital signs during a procedure. The second allegation, testified to by several witnesses assisting during a particular procedure, was that during that procedure Dr. Batra engaged in a conversation with his son and daughter-in-law via a cell phone calling feature known as FaceTime. Dr. Batra's son had attended medical school for a brief period before pursuing a legal career and expressed an interest in watching the procedure. The electronic transmission of the procedure was done without patient consent, although no patient data was transmitted over FaceTime. Dr. Batra expressed to staff members who assisted him that day that they keep the incident to themselves. Someone, however, reported the incident to other medical staff.

The members of the Fair Hearing Panel issued a report on March 9, 2016, that did not contain any findings that Dr. Batra violated the standard of medical practice or professional conduct. It did, however, include a specific finding that Dr. Batra failed to meet his burden of showing that the Medical Executive Committee's proceeding against him was arbitrary, capricious, or unreasonable.[5] The Fair Hearing Panel recommended conditionally renewing Dr. Batra's privileges if he agreed to waive certain rights under the bylaws and receive counseling and therapy.

Notwithstanding the Fair Hearing Panel's recommendations, on April 12, 2016, the Medical Executive Committee recommended to Covenant's Board of Directors that Dr.

---

[5] Per the bylaws, the standard to be applied by the Fair Hearing Panel is whether the Medical Executive Committee acted in an arbitrary, capricious, or unreasonable manner.

Batra's privileges be denied. Those recommendations were subsequently approved by the board.

Dr. Batra unsuccessfully appealed the denial of the renewal of his privileges to the Appellate Review Committee, which also found that he failed to meet his burden. On June 28, 2016, the Board of Directors accepted the recommendation of the Appellate Review Committee and affirmed its decision to adopt the Medical Executive Committee's recommendation to deny renewal of Dr. Batra's privileges at Covenant. At that point, the Board's decision to not renew Dr. Batra's clinical privileges became final.

As required by law, the next step was submitting the Board's decision to the National Practitioner Data Bank (NPDB).[6] The NPDB is a federal program that collects and provides information about professional malpractice lawsuit judgments as well as disciplinary and termination reports to health care organizations and facilities, professional license regulating governmental agencies, and third-party payors for health care insurance coverage. On July 20, 2016, the Chief Medical Officer at Covenant instructed an employee to submit a report to the NPDB concerning Dr. Batra.

Per the internal procedures of the NPDB, Dr. Batra challenged the adverse report by requesting review of the report by the Secretary of the United States Department of Health and Human Services. On March 10, 2017, Dr. Batra was informed by letter that the Secretary had conducted a review and denied his challenge. He was also advised that the adverse report would remain on file with the NPDB.

---

[6] Hospitals are required by 42 U.S.C. § 11133(a)(1)(A) and 45 CFR § 60.6 to report to the National Practitioner Data Bank any peer review action that adversely affects clinical privileges for longer than thirty days.

Based on the adverse report to the NPDB and the loss of his clinical privileges, Dr. Batra sued Covenant, in June 2017, for defamation, business disparagement, tortious interference with prospective relations, improper restraint of trade, breach of contract, and intentional infliction of emotional distress. He asserted that the report was inaccurate and misleading and demonstrated a conscious disregard for the truth of the allegations. He also complained that Covenant's attorney, Ben Davidson, made ex parte statements to the Medical Executive Committee and the Board of Directors which were detrimental to him.

Before any discovery was conducted, Covenant moved to dismiss Dr. Batra's suit under the Texas Citizens Participation Act. *See* § 27.003(a). In October 2017, a hearing was held on Covenant's motion to dismiss. No witnesses were presented; however, the trial court received affidavits and supporting documents after ruling on objections to that evidence. On November 22, 2017, the trial court signed an order dismissing Dr. Batra's suit with prejudice, while reserving a ruling on attorney's fees. *See* §§ 27.001, 27.005(c), (d). On December 19, 2017, the trial court signed an order awarding Covenant $47,500 in attorney's fees through the hearing on the motion to dismiss, plus additional fees for any successful appeals, and imposing a $1,000 sanction against Dr. Batra to deter him from bringing similar actions. *See* § 27.009(a)(1), (2).

Dr. Batra then sought to appeal the trial court's ruling by filing his notice of appeal on January 18, 2018, thirty days after the order was signed. Section 27.008(b) of the Act provides that an appellate court *shall expedite* an appeal, whether interlocutory or not, from a trial court order on a motion to dismiss a legal action under section 27.003. *See* § 27.008(b). For purposes of appellate timetables, an *expedited* appeal is an accelerated

6

appeal governed by the Texas Rules of Appellate Procedure for accelerated appeals. *See* TEX. R. APP. P. 28.1(a), (b). *See also Kim v. Kim*, No. 05-16-01508, 2017 Tex. App. LEXIS 3062, at *1 (Tex. App.—Dallas, pet. denied) (mem. op.). The Texas Rules of Appellate Procedure require a notice of appeal in an accelerated appeal to be filed within twenty days after the judgment or order is signed. TEX. R. APP. P. 26.1(b).

Although the notice of appeal in this case was filed thirty days after the order of dismissal was signed and was, therefore, untimely, Rule 26.3 provides a fifteen-day extension period if the notice is filed in the trial court and a motion for extension of time reasonably explaining the delay is filed in the appellate court. While a motion for extension of time is necessarily implied; *see Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex. 1997), it is still necessary for an appellant to reasonably explain the need for an extension. *See Jones v. City of Houston*, 976 S.W.2d 676, 677 (Tex. 1998). At the behest of this court, Dr. Batra did offer a timely reasonable explanation. Therefore, his notice of appeal was heretofore deemed timely-filed.

ISSUE ONE—FINDINGS OF FACT AND CONCLUSIONS OF LAW

By his first issue, Dr. Batra complains of the trial court's failure to enter findings of fact and conclusions of law sufficient to provide the parties with adequate notice of the basis for its ruling. He argues he suffered harm by the trial court's failure to do so. We disagree.

A *party who files a motion* to dismiss pursuant to section 27.003 may request the trial court to enter findings on whether suit was filed to deter or prevent the movant from exercising constitutional rights and whether suit was filed for an improper purpose, including to harass or to cause delay or to increase litigation costs. § 27.007(a). When

7

requested to issue such findings by the movant, the trial court is required to do so.  *See id.  See also Greer v. Abraham*, 489 S.W.3d 440, 443 (Tex. 2016).  However, the statute is silent and, therefore, imposes no duty on the trial court to make findings of fact and conclusions of law when requested by the *nonmovant*.

Dr. Batra acknowledges that the TCPA does not address traditional findings of fact and conclusions of law but notes it does not forbid them either.  *See Greer*, 489 S.W.3d at 443 n.3.  He maintains that *Greer* is "practically an instruction manual" for an appellate court to remand a cause to the trial court to explain its judgment.

Six days after the trial court signed its order granting Covenant's motion to dismiss with prejudice, Dr. Batra filed a request for findings of fact and conclusions of law.  *See* TEX. R. CIV. P. 296 (requiring request to be filed within twenty days after the judgment is signed in "any case tried . . . without a jury").  When no findings of fact and conclusions of law were filed, Dr. Batra did not file a notice of past due findings of fact and conclusions of law as required by Rule 297.  *See* TEX. R. CIV. P. 297.  A past-due reminder under Rule 297 is required to preserve the issue for appeal.  *See AD Villarai, LLC v. Chan II Pak*, 519 S.W.3d 132, 137 (Tex. 2017) (citing *Las Vegas Pecan & Cattle Co. v. Zavala County*, 682 S.W.2d 254, 255-56 (Tex. 1984)).  Consequently, without addressing whether findings of fact and conclusions of law are appropriate pursuant to Rule 296 when requested by the nonmovant from an order dismissing a suit under the TCPA, we conclude that Dr. Batra did not preserve his issue for appellate review.  Issue one is overruled.[7]

---

[7] In his argument, Dr. Batra also complains of this court's denial of his opposed motion to exceed the word count limit in his original brief to include his *Proposed Findings of Fact and Conclusions of Law*. Given our disposition of his issue, his proposed findings are of no legal consequence.  Any complaint regarding our disposition of his motion should be directed to the Supreme Court of Texas.

ISSUE TWO—DISMISSAL UNDER THE TEXAS CITIZENS PARTICIPATION ACT

The Texas Citizens Participation Act is often characterized as an "anti-SLAPP" (Strategic Lawsuits Against Public Participation) statute. *See KBMT Operating Co. LLC v. Toledo*, 492 S.W.3d 710, 713 n.6 (Tex. 2016); *Serafine v. Blunt* (*Serafine I*), 466 S.W.3d 352, 356 (Tex. App.—Austin 2015, no pet.). The stated purpose of the TCPA is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." *See* § 27.002; *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017). To effectuate the purpose of the TCPA, the Legislature included an expedited manner of dismissing claims brought to intimidate or to silence a defendant's exercise of an enumerated First Amendment right. *See* § 27.003. *See also Coleman*, 512 S.W.3d at 898.

The first step of a TCPA analysis is to determine whether the defendant has demonstrated by a preponderance of the evidence that the TCPA applies to the plaintiff's claims. *See Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 800-01 (Tex. App.—Austin 2017, pet. filed March 7, 2018). In making that determination we must recognize that the statute "casts a wide net," and that "[a]lmost any imaginable form of communication, in any medium, is covered." *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018) (citing § 27.001(1)). In order for the TCPA to be applicable, a defendant moving to dismiss must show by a preponderance of the

9

evidence[8] that the plaintiff's claims are based on, relate to, or are in response to the defendant's exercise of: (1) the right of free speech, (2) the right to petition, or (3) the right of association. § 27.005(b). In considering whether the TCPA is applicable, the trial court is statutorily required to consider all pleadings, as well as supporting and opposing affidavits stating the facts on which a claim of liability is based. § 27.006. *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (citing *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015)). If the record demonstrates that the plaintiff's claim implicates one of these rights, then the statute is applicable as to that claim, and the trial court must proceed to the second step.

At the second step of a TCPA analysis, the burden shifts to the plaintiff to establish by "clear and specific evidence"[9] a prima facie case[10] for each essential element of the

---

[8] Preponderance of the evidence means the greater weight and degree of credible evidence that would create a reasonable belief in the truth of the matter. *Herrera v. Stahl*, 441 S.W.3d 739, 741 (Tex. App.—San Antonio 2014, no pet.).

[9] The TCPA does not define "clear and specific" evidence. Thus, the words "clear" and "specific" are given their plain or common meaning. *In re Lipsky*, 460 S.W.3d at 590. Proof by clear and specific evidence is "more than mere notice pleading." *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (citing *In re Lipsky*, 460 S.W.3d at 590). A party must "provide enough detail to show the factual basis for its claim." *In re Lipsky*, 460 S.W.2d at 591. It is clear, however, that the TCPA does not impose an elevated evidentiary standard or categorically reject circumstantial evidence. *Id.* Nor does it impose a higher burden of proof than that required of the plaintiff at trial. *Id.*

[10] The legal meaning of a prima facie case is "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d at 590 (citing *Simonds v. Stanolind Oil & Gas Co.*, 134 Tex. 348, 136 S.W.2d 207, 209 (1940)). It is the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* (quoting *In re DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004)). Under the TCPA, a prima facie case requires "element-by-element, claim-by-claim exactitude." *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 206 (Tex. App.—Austin 2017, pet. dism'd). "Conclusory statements are not probative and accordingly will not suffice to establish a prima facie case." *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 355 (Tex. App.—Houston [1st Dist.] 2013, pet. denied.) (citing *In re DuPont de Nemours & Co.*, 136 S.W.3d at 223-24).

claim in question. § 27.005(c). If the plaintiff meets that burden, the court may not grant the defendant's motion to dismiss as to that claim. *Id.*

Again, in determining whether to grant or deny a motion to dismiss, the trial court is statutorily required to consider all pleadings, as well as supporting and opposing affidavits stating the facts on which a claim of liability is based. § 27.006. *Bedford*, 520 S.W.3d at 904. In addition to consideration of the pleadings and affidavits, a trial court may, but is not required to, hear live testimony and receive the submission of documentary evidence.

Here, in addition to the submission of his own affidavit and the affidavit of an expert witness, Dr. John Dunn, Dr. Batra submitted "a box under seal" containing several thousand pages of "protected materials" he asserts were relevant to his claims After a lengthy discussion concerning the admissibility of the documents contained within that box, the trial court acknowledged to counsel that it would consider its contents, subject to Covenant's objections and claims of privilege. Thus, in this case, we must decide whether the record, including the pleadings, supporting and opposing affidavits, and the "box" of exhibits considered by the trial judge, contains a sufficient quantum of evidence to implicate the TCPA and, if so, whether it also contains a minimum quantum of "clear and specific" evidence necessary to support a rational inference establishing each element of Dr. Batra's claims.[11]

---

[11] To the extent the contents of the "box" were not specifically referenced in the affidavits of Dr. Batra and Dr. Dunn, this court is not required to sift through a voluminous record to determine whether an assertion of fact is valid. *Labrador Oil Co. v. Norton Drilling Co.*, 1 S.W.3d 795, 803 (Tex. App.—Amarillo 1999, no pet.).

Assuming the TCPA is applicable (step one), and the nonmovant plaintiff has established by "clear and specific evidence" a prima facie case for each essential element of a claim being asserted (step two), then the motion to dismiss should be denied unless the movant defendant establishes by a preponderance of the evidence each essential element of a "valid defense" to the nonmovant plaintiff's claim (step three). § 27.005(d). In considering this third step (whether a valid defense to the nonmovant plaintiff's claim has been established by a preponderance of the evidence) we apply a standard of review that is essentially equivalent to a motion for summary judgment on an affirmative defense. This is so because it is the defendant's burden to establish a valid defense to the plaintiff's claim. Therefore, in order to defeat the plaintiff's establishment of a prima facie claim, the defendant must establish, as a matter of law, each essential element of at least one valid defense as to each of the nonmovant plaintiff's claims. This analysis also requires "element-by-element, claim-by-claim exactitude." *See Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 206 (Tex. App.—Austin 2017, pet. dism'd).

In reviewing whether a defense has been established as a matter of law, this court applies familiar standards. One, the defendant has the burden of showing that there is no genuine issue of material fact and that it is entitled to a judgment on its defense as a matter of law. Two, in deciding whether there is a disputed material fact issue, evidence favorable to the claimant will be taken as true; and (3) every reasonable inference must be indulged in favor of the claimant and any doubts resolved in his favor. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex. 1997) (citing *Nixon v. Mr. Property Management* Co., 690 S.W.2d 546, 548-49 (Tex. 1985)).

12

Furthermore, in conducting our third step review, we consider the pleadings and evidence in a light favorable to the nonmovant. *Porter-Garcia v. Travis Law Firm*, *P.C.*, Nos. 01-17-00203-CV, 01-17-00206-CV, 2018 Tex. App. LEXIS 6676, at *11 (Tex. App.—Houston [1st Dist.] Aug. 23, 2018, no pet. h. (citing *Deuell v. Tex. Right to Life Comm., Inc.*, 508 S.W.3d 679, 685 (Tex. App.—Houston [1st Dist.] 2016, pet. denied)).

STANDARD OF REVIEW

We review *de novo* the trial court's determinations whether the parties met or failed to meet their respective burdens of proof under section 27.005. *See Tervita*, *LLC v. Sutterfield*, 482 S.W.3d 280, 282 (Tex. App.—Dallas 2015, pet. denied). *See also Cox Media Group*, *LLC v. Joselevitz*, 524 S.W.3d 850, 859 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (reviewing *de novo* the denial of a motion to dismiss under the TCPA).

STEP ONE—APPLICATION OF THE TCPA

The TCPA applies if Dr. Batra's suit is "based on, relates to, or is in response to" Covenant's exercise of the right of free speech. The exercise of the right of free speech is defined as a "communication made in connection with a matter of public concern." § 27.001(3). A "communication" is defined as the "making or submitting of a statement or document in any form or medium including oral, visual, written, audiovisual, or electronic." § 27.001(1); *Deaver v. Desai*, 483 S.W.3d 668, 672 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The definition encompasses both public and private communications. *See Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015).

A "matter of public concern" includes an issue related to "health or safety, environmental, economic, or community well-being, the government, a public official or public figure, or a good, product, or service in the marketplace." § 27.001(7)(A). The

13

provision of medical services by a health care professional constitutes a matter of public concern. *Lippincott*, 462 S.W.3d at 510. Communications about a physician's competence are also a matter of public concern. *See Mem'l Hermann Health Sys. v. Khalil*, No. 01-16-00512-CV, 2017 Tex. App. LEXIS 7474, at *15 (Tex. App.—Houston [1st Dist.] Aug. 8, 2017, pet. denied) (mem. op.).

Dr. Batra's suit is based on two types of communications, to wit: (1) the adverse report to the NPDB and (2) Davidson's ex parte statements at the Medical Executive Committee meeting and subsequently, at the April 2016 Board of Directors' meeting. Because a "communication" may take any form or medium, a review of the pleadings shows that Covenant established the first prong of the first step in determining applicability of the TCPA—a communication.

As to the second prong of the first step, Covenant was also required to establish that the communications in question were made "in connection with" a matter of public concern. The communications at issue relate to Dr. Batra's handling of specific cases, his medical competence, and disciplinary action by Covenant. Notwithstanding Dr. Batra's insistence that the communications at issue were private, those types of matters have consistently been found to be matters of public concern. *See Lippincott*, 462 S.W.3d at 510; *Khalil*, 2017 Tex. App. LEXIS 7474, at *15. *See also Budri v. Humphreys*, No. 02-18-00070-CV, 2018 Tex. App. LEXIS 6294, at *5-6 (Tex. App.—Fort Worth Aug. 9, 2018, no. pet. h.) (mem. op.) (finding private emails to be a matter of public concern).

In his petition, Dr. Batra's claims for defamation, business disparagement, and improper restraint of trade are directly based on, related to, or are in response to Covenant's submission of the adverse report to the NPDB and Davidson's statements to

14

certain organizations within the Covenant system. His claims for tortious interference with prospective relations, breach of contract, and intentional infliction of emotional distress are tangentially based on, related to, or in response to submission of the adverse report and statements made by Davidson. As such, Covenant established that Dr. Batra's suit was based on, related to, or was in response to a communication concerning a matter of public concern, implicating Covenant's First Amendment right of free speech as contemplated by the Texas Citizens Participation Act. Accordingly, we conclude that Covenant has satisfied both prongs of the first step concerning whether Dr. Batra's claims fall within the scope of the TCPA.[12]

During oral submission of this appeal, both parties agreed that the "cornerstone" of the underlying case is the following portion of the adverse report submitted to the NPDB:

> On June 28, 2016, the Board of Directors of Covenant Health System took final action to uphold a recommendation originating from the Covenant Medical Center ("CMC") Medical Executive Committee ("MEC") to deny Dr. Subhash Batra's application for renewal of medical staff privileges at CMC. The MEC recommendation was not based upon a single issue but rather multiple events involving patient safety concerns, as well as confidentiality issues. Events specifically cited as cause for concern included instances of Dr. Batra's failure to timely allow intervention by an anesthesiologist when requested, as well as the use of a cell phone video calling feature to transmit a patient procedure without patient consent.

They disagree, however, on the impact of the quoted excerpt on each of Dr. Batra's claims. Covenant contends the report is merely an accurate account of what transpired,

---

[12] Dr. Batra argues that courts are ignoring First Amendment precedent from the United States Supreme Court by applying the TCPA. But the TCPA is not restricted solely to speech that enjoys constitutional protections. *See Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018) (noting that "[i]t does not follow from the fact that the TCPA professes to safeguard the exercise of certain First Amendment rights that it should *only* apply to constitutionally guaranteed activities") (emphasis in original). *See also Elite Auto Body LLC*, 520 S.W.3d at 204-05 (rejecting attempts to limit the TCPA "communications" solely to those the First Amendment protects for to do so would read language into the statute that is not there).

15

while Dr. Batra asserts the report was made with reckless disregard for the truth. In step two, we will address each of Dr. Batra's claims independently.

STEP TWO—WHETHER THE PLAINTIFF HAS ESTABLISHED A PRIMA FACIE CASE

DEFAMATION

Defamation is "the invasion of a person's interest in [his] reputation and good name." *Hancock v. Variyam*, 400 S.W.3d 59, 63 (Tex. 2013). To establish a defamation claim, a plaintiff must show the defendant: (1) published a false statement of fact to a third party, (2) that defamed the plaintiff, (3) with the requisite degree of fault, and (4) the statement caused damages, unless the statements were defamatory per se. *See In re Lipsky*, 460 S.W.3d at 593. *See also Khalil*, 2017 Tex. App. LEXIS 7474, at *16-17.

As to the "requisite degree of fault," a plaintiff suing for defamation for statements made by a peer review committee must establish malice as an element of the claim. *See Ching v. Methodist Children's Hosp.*, 134 S.W.3d 235, 242 (Tex. App.—Amarillo 2003, pet. denied). Therefore, in the context of a defamation claim based upon communications made by a peer review committee, a plaintiff must show actual malice by demonstrating that the defendant made a false and defamatory statement of fact "with knowledge that it was false or with reckless disregard of whether it was false or not." *See Van Der Linden v. Khan*, 535 S.W.3d 179, 202 n.12 (Tex. App.—Fort Worth 2017, pet. denied) (citing v. *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989)). *See also New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). *Cf.* TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(7) (West Supp. 2018) (requiring a plaintiff to prove a specific intent by the defendant to cause substantial injury or harm to the plaintiff to show malice). When a plaintiff's claim triggers a qualified privilege or immunity defense, a plaintiff must prove

16

actual malice regardless of his status. *Khalil*, 2017 Tex. App. LEXIS 7474, at *17. If a qualified privilege exists, "the law presumes good faith and want of malice." *Id.* at *18.

Therefore, in order to avoid dismissal of his defamation claim, Dr. Batra was required to provide clear and specific evidence that Covenant and Davidson acted with actual malice during the peer review process which culminated in the adverse report submitted to the NPDB. In support of its motion to dismiss, Covenant provided the affidavits of Davidson and Chief Medical Officer, Dr. Craig D. Rhyne.

Davidson averred that he represented the Medical Executive Committee at the hearing before the Fair Hearing Panel on whether to renew Dr. Batra's privileges. As its counsel, he made himself available to the hospital board to answer any questions concerning the hearing during its deliberation of Dr. Batra's application to renew his privileges. He reviewed the report submitted to the NPDB and found it to be "a truthful report of the conclusion of the Fair Hearing process" and he averred that the report accurately reflected the reasons for the adverse action taken against Dr. Batra, i.e., patient safety concerns and confidentiality issues. He confirmed the report was accurate, truthful, and made with conscious regard for the truth of the proceedings. He expressed his unawareness of any ill motives by anyone involved in the Fair Hearing process or any other motive for denial of Dr. Batra's privileges at Covenant other than patient treatment and confidentiality issues. He also stated that at no time did he disregard the truth, falsify information, or act with any intention to harm Dr. Batra or his practice.

By his affidavit, Dr. Rhyne testified to his personal knowledge of the medical peer review process. He provided specific details of the bylaws and the conduct and proceedings of the Medical Executive Committee and the Board of Directors. As a voting

member of the Medical Executive Committee, Dr. Rhyne had personal knowledge of the events involving Dr. Batra. He stated the adverse report was a truthful report and accurately reflected the reasons for the adverse action. He was unaware of any falsity in the report which was carefully drafted and prepared from the evidence presented during the Fair Hearing process. He averred that at no time did he disregard the truth, falsify information, or act with any intention to harm Dr. Batra or his practice. He also had no indication of any ill motives by anyone in the Covenant system regarding Dr. Batra.

Based on our review of the relevant evidence, Dr. Batra has not shown by clear and specific evidence that Covenant acted with malice in drafting an adverse report that was ultimately submitted to the NPDB. Furthermore, Covenant was required by law to submit the report and there is no indication of malice throughout the process by anyone associated with Covenant. Without meeting his burden, Dr. Batra's defamation claim could not survive dismissal. Because Dr. Batra did not establish by clear and specific evidence a prima facie case for defamation, the trial court did not err in dismissing that claim.

BUSINESS DISPARAGEMENT

To establish business disparagement, a plaintiff must show (1) the defendant published false and disparaging information about the plaintiff, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff. *In re Lipsky*, 460 S.W.3d at 592 (citing *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003)). Essential to a claim of business disparagement is proof of malice and lack of privilege. As previously discussed, there is no clear and specific evidence that Covenant or Davidson acted with malice in submitting the adverse report to the NPDB. Additionally,

18

as discussed later in this opinion, Covenant's peer review process entitles it to a qualified privilege and immunity from civil liability. Again, because Dr. Batra did not establish by clear and specific evidence a prima facie case for business disparagement, the trial court correctly dismissed that claim.

### IMPROPER RESTRAINT OF TRADE

Restraint of trade is an antitrust claim governed by the Texas Free Enterprise and Antitrust Act of 1983. *See* TEX. BUS. & COM. CODE ANN. §§ 15.01-.52 (West 2011). Section 15.05(a) provides that "[e]very contract, combination, or conspiracy in restraint of trade or commerce is unlawful." TEX. BUS. & COM. CODE ANN. § 15.05(a). Section 15.05(b) makes it "unlawful for any person to monopolize, attempt to monopolize, or conspire to monopolize any part of trade or commerce." TEX. BUS. & COM. CODE ANN § 15.05(b). A person may bring suit "whose business or property has been injured by reason of any conduct declared unlawful" in those statutes. TEX. BUS. & COM. CODE ANN § 15.21; *Montoya v. San Angelo Cmty. Med. Ctr.*, No. 03-16-00510-CV, 2018 Tex. App. LEXIS 3868, at *15 (Tex. App.—Austin May 31, 2018, pet. filed July 11, 2018) (mem. op.).

The elimination of a single competitor does not constitute proof of an anticompetitive effect for every market and context. *In re Mem'l Hermann Hosp. Sys*, 464 S.W.3d 686, 709 (Tex. 2015). To prevail on an improper restraint of trade claim, a plaintiff must "plead . . . a reduction of competition in the market in general and not mere injury to their own positions as competitors in the market." *Id.*

Dr. Batra alleged in his petition that Covenant violated section 15.05 of the Texas Business and Commerce Code by "illegal monopolization and/or restraint of trade and

19

attempted monopolization and/or restraint of trade and/or conspiracy to monopolize or restrain trade." In his affidavit, he made global statements that Covenant derived an illegal benefit from termination of his privileges by limiting patient choice in the Lubbock area. He did not, however, present clear and specific evidence that his removal from the pool of interventional gastroenterologists in the area would adversely and unreasonably affect overall competition. Accordingly, because he did not establish by clear and specific evidence a prima facie case for improper restraint of trade, the trial court correctly dismissed that claim.

### TORTIOUS INTERFERENCE WITH PROSPECTIVE RELATIONS

To prevail on a claim of tortious interference with prospective relations, a plaintiff must show that (1) there was a reasonable probability that the parties would have entered into a business relationship; (2) the defendant committed an independently tortious or unlawful act that prevented the relationship from occurring; (3) the defendant acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference. *Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013); *Montoya*, 2018 Tex. App. LEXIS 3868, at *20-21. As to the second prong, "independently tortious" means conduct that violates some other recognized tort duty. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001).

Dr. Batra asserts he had longstanding and continuous relationships with referring physicians in the Lubbock area and that the rate of referrals was greatly reduced due to

20

Covenant's actions. He also claims there was a "reasonable probability" that he *would have been* selected to perform procedures on patients from referring physicians.

The evidence presented does not clearly and specifically establish which referrals or procedures Dr. Batra lost due to the adverse report. To speculate that he "would have been" chosen to perform procedures is insufficient to meet his burden of proof. He does not establish which business relationships he would have entered into but for the alleged defamation by Covenant. Furthermore, he did not plead that Covenant committed an independently tortious act. His affidavit makes conclusory statements that his reputation was harmed and that his gastroenterology practice sustained a reduction in gross income in the years following the peer review process and submission of the adverse report to the NPDB. He asserts that health care providers in Lubbock "*would certainly check* [the adverse report] as standard operating procedure when considering employment . . . or reimbursement for claims for health care provided." Again, Dr. Batra speculated that other Lubbock health care providers would have checked the NPDB without pointing to a single specific instance of a lost referral. Dr. Batra also failed to produce clear and specific evidence of the required element that Covenant acted with a conscious desire to prevent a business relationship from occurring or that Covenant knew that any interference with a business relationship was certain to occur from the adverse report. As such, Dr. Batra failed to establish a prima facie case for tortious interference with prospective business relations and the trial court correctly dismissed his claim.

### BREACH OF CONTRACT

The elements that must be proven to prevail on a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff;

21

(3) breach by the defendant; and (4) damages sustained by the plaintiff as a result of that breach. *See Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied). Dr. Batra bases his breach-of-contract claim on the Medical Staff Bylaws and in doing so, relies on *Gonzalez v. San Jacinto Methodist Hosp.*, 880 S.W.2d 436 (Tex. App.—Texarkana 1994, writ denied) (finding that procedural rights under the hospital bylaws were contractual).

Dr. Batra maintains that each application for renewal of privileges and acceptance letter documented a "meeting of the minds" under the Medical Staff Bylaws which, once signed by the parties, created a contract. As Covenant points out, the Medical Staff Bylaws do not form contracts with physicians. Those bylaws, which are the Medical Staff Bylaws for Covenant Medical Center, are different and apart from the hospital's bylaws. *See Stephan v. Baylor Med. Ctr.*, 20 S.W.3d 880, 887 (Tex. App.—Dallas 2000, no pet.). A hospital's bylaws can constitute contractual rights. *Id.* But rights created by medical staff bylaws are not necessarily binding on a hospital. *Id.* The medical staff is composed of physicians and other medical personnel while the hospital is an entity governed by its board of directors. *Id.* at 888. Medical staff bylaws do not create contractual obligations for the hospital. *Park v. Mem'l Health Sys. of E. Tex.*, 397 S.W.3d 283, 288 (Tex. App.—Tyler 2013, pet. denied).

Accordingly, Dr. Batra did not establish by clear and specific evidence the breach of a valid contract between himself and Covenant. There is no evidence that the power of Covenant's Board of Directors was defined or limited by the Medical Staff Bylaws. Dr. Batra's reliance on *Gonzalez* is distinguishable as that case found that hospital bylaws, and not medical staff bylaws, created contractual procedural rights. Here, Dr. Batra relied

22

on the Medical Staff Bylaws, which were not binding on Covenant, to support his breach of contract claim. Because Dr. Batra did not establish the breach of a valid contract under the Medical Staff Bylaws, the trial court correctly dismissed his breach of contract claim. *See Columbia Valley Healthcare Sys*, *L.P. v. Pisharodi*, No. 13-16-00613-CV, 2017 Tex. App. LEXIS 9350, at *8 (Tex. App.—Corpus Christi Oct. 5, 2017, no pet.) (mem. op.).

<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

The tort of intentional infliction of emotional distress requires a plaintiff to show (1) the defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused the plaintiff emotional distress; and (4) the emotional distress was severe. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). The Supreme Court has set a high standard for "extreme and outrageous" conduct holding that the element is only satisfied if the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See id.  See also Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017) (finding that defendant's encouragement to another to author a column on the suicide of the plaintiffs' son while they were still in mourning could not meet the "high standard for extreme and outrageous" conduct).

Assuming arguendo that Dr. Batra could have established he suffered severe emotional distress by Covenant's conduct, he could not satisfy the element of "extreme and outrageous" conduct based on the law as it currently exists. Furthermore, he cites no authority finding that denial of medical staff privileges is "extreme and outrageous" conduct. As such, the trial court correctly dismissed his claim for intentional infliction of emotional distress.

STEP THREE—COVENANT'S AFFIRMATIVE DEFENSES

Even assuming, as Dr. Batra argues, that he satisfied his burden of showing by clear and specific evidence each element of a claim or cause of action, the trial court was still required by statute to dismiss that claim if Covenant met its burden to establish by a preponderance of the evidence each essential element of at least one valid defense as to that claim. § 27.005(d). In its motion to dismiss, as to all claims and causes of action, Covenant raised the defenses of (1) qualified privilege, (2) immunity from civil liability under Texas and federal law, and (3) limitations.

QUALIFIED PRIVILEGE

A qualified privilege exists for employers and employees communicating about the competence of another employee when the communication is made to a person having a corresponding interest or duty in the matter being discussed. *Khalil*, 2017 Tex. App. LEXIS 7474, at *18. When the qualified privilege exists, "the law presumes good faith and want of malice." *Id.* "Once the conditional privilege is shown to exist the burden is on the plaintiff to show that the privilege is lost, that is, the plaintiff must then show malice." *Id.* (quoting *Bolling v. Baker*, 671 S.W.2d 559, 564-65 (Tex. App.—San Antonio 1984, writ dism'd w.o.j.)).

"The peer review process is analogous to an employer's performance assessment of an employee or an employer's investigation into an employee's alleged wrongdoing." *Khalil*, 2017 Tex. App. LEXIS 7474, at *18. Thus, peer review activities are entitled to a qualified privilege. *See St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 509 (Tex. 1997). Because Covenant's peer review process enjoys a qualified privilege with a presumption that Covenant acted without malice, Dr. Batra was required to produce clear

24

and specific evidence of actual malice for Covenant to lose its privilege. *Ching*, 134 S.W.3d at 242. As discussed earlier, the evidence presented by Covenant negated actual malice; therefore, Covenant established that it was entitled to a qualified immunity defense as to all claims.

### IMMUNITY FROM CIVIL LIABILITY UNDER TEXAS AND FEDERAL LAW

The purpose of the Texas Medical Practice Act is to protect the public interest. TEX. OCC. CODE ANN. § 151.003(1) (West 2012). Pursuant to that Act, a cause of action does not accrue against a member, agent, or employee of a medical peer review committee or against a health care entity from any act, statement, determination or recommendation made or act reported, without malice, in the course of medical peer review. TEX. OCC. CODE ANN. § 160.010(b) (West 2012). Therefore, under Texas law, the defendants were entitled to immunity.

Federal law also provides immunity for similar claims. The Health Care Quality Improvement Act (HCQIA), 42 U.S.C. § 11101, sets out standards for medical professional review actions that, if followed, provide individuals and professional review bodies immunity from liability for damages. §§ 11111-11112. The HCQIA was passed out of concern for the increasing occurrence of medical malpractice and the need to improve the quality of medical care. *Poliner v. Tex. Health Sys.*, 537 F.3d 368, 376 (5th Cir. 2008), *cert. denied*, 555 U.S. 1149, 129 S. Ct. 1002, 173 L. Ed. 2d 315 (2009). The willingness of medical professionals to review the performance of their peers is essential to policing the quality of health care. *Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Parish*, 373 Fed. Appx. 438, 444 (5th Cir. 2010). The HCQIA also restricts the ability of incompetent doctors to move from state to state without disclosure or discovery of

25

damaging or incompetent performance. *Poliner*, 527 F.3d at 376. The HCQIA immunity extends to peer review actions. *Id.* at 377.

To be protected from liability for damages under the HCQIA, a professional review action must be taken:

(1) in the reasonable belief that the action was in furtherance of quality health care,

(2) after a reasonable effort to obtain the facts of the matter,

(3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and

(4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3). A professional review action shall be presumed to have met the preceding standards necessary for the protection set out in [42 U.S.C. § 11111(a)] unless the presumption is rebutted by a preponderance of the evidence.

*See* 42 U.S.C. § 11112(a).

As discussed under Dr. Batra's defamation claim, the affidavit submitted by Dr. Rhyne establishes the procedure for peer review of physicians at Covenant. He explained the tasks of the Credentialing Committee, the Medical Executive Committee, the Fair Hearing Panel, and the Board of Directors as they relate to the peer review process. He averred that pursuant to the Medical Staff Bylaws, Dr. Batra was provided with notice, a fair hearing, representation by counsel, and an appeal to the Appellate Review Committee. Dr. Rhyne also testified that the proceedings were in furtherance of quality health care after a reasonable effort to obtain the facts of the underlying accusations. Accordingly, Dr. Batra failed in his burden to show that the Medical

26

Executive Committee acted in an arbitrary, capricious, or unreasonable manner in recommending to the Board of Directors that his privileges at Covenant be denied.

The evidence showed that the medical peer review process was conducted without malice. As such, Covenant was entitled to a qualified privilege and also to immunity from civil liability under Texas and federal law. Because Covenant established by the required burden of proof that it enjoyed a qualified privilege as to all claims and that it was entitled to immunity from civil liability, we need not address Covenant's limitations defense. The trial court correctly dismissed all of Dr. Batra's claims not only on his failure to meet his burden of proof under the TCPA, but also on Covenant's ability to establish at least one affirmative defense by a preponderance of the evidence. Issue two is overruled.

ISSUE THREE—ATTORNEY'S FEES

Section 27.009 authorizes the trial court to award the moving party who prevails on a motion to dismiss reasonable attorney's fees as justice and equity may require and sanctions against the party who brought the suit sufficient to deter that party from bringing similar actions. *See* § 27.009(a)(1), (2). Generally, the reasonableness of attorney's fees authorized by statute is a question of fact. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). The reasonableness of attorney's fees rests with the sound discretion of the trial court. *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016).

Although Dr. Batra included a statement in the *Summary of Argument* section of his original brief challenging the trial court's award of attorney's fees to Covenant, he did not present any argument or authority in the body of the brief. Neither did he present any argument in his reply brief. Consequently, any challenge to the award of attorney's fees to Covenant is inadequately briefed and therefore, not preserved for review by this court.

*See* TEX. R. APP. P. 38.1(i). *See also ERI Consulting Eng'rs*, *Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010) (noting that an appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to the authorities and to the record). Issue three is overruled.

ISSUE FOUR—SANCTIONS

In its motion to dismiss, Covenant requested imposition of sanctions against Dr. Batra and the trial court ordered that he pay Covenant $1,000 in sanctions. Covenant suggests that the sanctions award was proper because Dr. Batra repeatedly argued his case in "multiple forums." Dr. Batra counters that there is no evidence to support the sanctions award because he did not abuse the legal process by pursuing his rights under different forums, i.e., the Texas Medical Board and the NPDB, and because he was merely exhausting his administrative rights of appeal before filing suit.

Notwithstanding the fact that we agree Dr. Batra was simply pursuing his administrative remedies on the denial of his privileges at Covenant, section 27.009(a)(2) provides that whenever a trial court orders dismissal of a suit pursuant to the provisions of the TCPA, it "shall award" the movant "sanctions . . . sufficient to deter the party that brought the legal action from bringing similar actions . . . ." *See Urquhart v. Calkins,* No. 01-17-00256-CV, 2018 Tex. App. LEXIS 5145, at *14 (Tex. App.—Houston [1st Dist.] July 10, 2018, no pet. h.) (mem. op.). *See also Sullivan v. Abraham,* No. 07-17-00125-CV, 2018 Tex. App. LEXIS 1196, at *2 n.2 (Tex. App.—Amarillo Feb. 13, 2018, no pet.) (mem. op.).

There is no statutory requirement that the trial court find or believe that a claimant abused the legal process before imposing sanctions. The plain language of section

28

27.009(a)(2) "presumes that *some* sanctions award—i.e., an amount greater than zero—is required" but allows the trial court broad discretion to determine the amount. *Serafine v. Blunt* (*Serafine II*), No. 03-16-00131-CV, 2017 Tex. App. LEXIS 4606, at *23 (Tex. App.—Austin May 19, 2017, pet. denied) (mem. op.). Therefore, we review a sanctions order pursuant to section 27.009(a)(2) under an abuse of discretion standard. *Urquhart* 2018 Tex. App. LEXIS 5145, at *15. In light of the circumstances of this case and the record before us, we conclude the trial court did not abuse its discretion in ordering Dr. Batra to pay sanctions of $1,000 to Covenant. Issue four is overruled.

CONCLUSION

The trial court's order dismissing Dr. Batra's claims with prejudice is affirmed.


Patrick A. Pirtle
Justice