

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-19-00308-CV

---

**TITA SENEE GRAVES, APPELLANT**

V.

**NAAG PATHOLOGY LABS, PC, DR. EVAN WILLIAM MATSHES
AND DR. SAM ANDREWS, APPELLEES**

---

On Appeal from the 72nd District Court
Lubbock County, Texas
Trial Court No. 2019534246, Honorable Ruben Reyes, Presiding

---

May 25, 2021

MEMORANDUM OPINION

Before PIRTLE and PARKER and DOSS, JJ.

Appellant Tita Senee Graves, an employee of Lubbock County, Texas, sued Appellees Sam Andrews, M.D., Evan Matshes, M.D., and NAAG Pathology Labs, PC ("NAAG"), alleging they tortiously interfered with her employment-at-will contract by inducing the county to terminate her employment. Appellees filed a motion to dismiss

Graves' entire lawsuit under the Texas Citizens Participation Act (TCPA);[1] the district court granted Graves' motion. We affirm the judgment.

## Background

According to the allegations contained in her live petition and the evidence[2] filed in response to the motion to dismiss, Graves was employed by the Lubbock County Medical Examiner's Office as a morgue technician and later a death investigator. In August 2018, the county contracted for medical examiner services with NAAG. Andrews served as contract medical examiner; as with NAAG, he was an independent contractor. Matshes, a pathologist and managing member of NAAG, joined Andrews in Lubbock in August 2018.

Upon his arrival at the medical examiner's office, Matshes allegedly explained to the staff that NAAG was implementing a new protocol and technique for autopsies whereby additional tissue from the cadavers of infants and young children would be collected for his research. Even though the parties dispute whether he was an appropriately-licensed physician, the pleadings show Matshes assembled the staff to watch him perform two infant autopsies. He made incisions and removed the infants' organs while Andrews and the staff observed. The tissue was then placed in formalin and shipped to NAAG's facility in San Diego, California, for testing.

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001-.011 (West 2020 & West Supp. 2020).

[2] Matshes, Andrews, and NAAG objected to portions of Graves' evidence; the court sustained some of those objections. The evidence we have considered is that portion which remained following the trial court's rulings, which Graves does not challenge on appeal.

At some point, Graves took three or four photographs of Matshes performing an autopsy to document that the work was performed by an unlicensed physician. Graves transmitted the photographs to pathologist, Stephen Pustilnik, M.D.

During early December 2018, Graves also allegedly reported to a Lubbock police officer her concerns that an unlicensed physician was performing autopsies, that excessive tissue was being harvested from cadavers, and other concerns about the professionalism and competence of NAAG. In January 2019, Graves also allegedly reported concerns to a Lubbock County commissioner.

Appellees contend that after Matshes and Andrews learned of Graves taking photographs and sharing them with Pustilnik, they expressed concern with Lubbock County officials about an alleged leak of confidential information.

On January 14, 2019, Matshes met with Graves and accused her of speaking with law enforcement and the county commissioner. On January 17, 2019, Andrews informed Graves that she had been terminated.

In February 2019, Graves filed suit, alleging one cause of action: that Appellees tortiously interfered with her employment-at-will contract with Lubbock County, leading to her being fired. Appellees answered and filed a motion to dismiss under the TCPA.[3] They asserted the Act applied because their alleged conduct concerned their rights of free

---

[3] Although the Legislature amended the TCPA in 2019, it expressly provided that the amendments applied prospectively: only to an action filed on or after September 1, 2019. Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 TEX. GEN. LAWS 684, 687. This appeal is governed by the prior law.

3

speech and free association. They further contended Graves lacked prima facie evidence of tortious interference and alternatively asserted affirmative defenses.

Following a hearing, the district court granted the motion to dismiss and rendered final take-nothing judgment. Per the TCPA's requirements, the court awarded Appellees attorney's fees of $20,000, conditional appellate awards totaling $42,000, and assessed a sanction against Graves of $0. This appeal followed.

Analysis

Through one issue, Graves argues the trial court erred by dismissing her case under the TCPA. We review de novo the trial court's determinations whether the parties met or failed to meet their respective burdens of proof under section 27.005. *Tex. Custom Wine Works, LLC v. Talcott,* No. 07-19-00186-CV, 2020 Tex. App. LEXIS 1737, at *7 (Tex. App.—Amarillo Feb. 27, 2020, no pet.); *Batra v. Covenant Health Sys.,* 562 S.W.3d 696, 708 (Tex. App.—Amarillo 2018, pet. denied). We also review issues of statutory construction de novo. *ExxonMobil Pipeline Co. v. Coleman,* 512 S.W.3d 895, 899 (Tex. 2017) (per curiam).

We employ a three-step process to determine whether the trial court correctly addressed the motion to dismiss. *Youngkin v. Hines,* 546 S.W.3d 675, 679 (Tex. 2018). First, we assess whether Appellees as movants showed by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of, *inter alia*, the right of free speech or the right of association. *See* Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 TEX. GEN. LAWS 961, 963 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b)); *Youngkin,* 546 S.W.3d at 679.

4

Second, if the movants satisfy their initial burden, we determine whether Graves, as non-movant, proves by clear and specific evidence her prima facie case for each essential element of the claim in question. *Youngkin*, 546 S.W.3d at 679. Third, but only if Graves discharges her burden to show her prima facie evidence, we examine whether Appellants proved every essential element of any affirmative defense by a preponderance of the evidence. *Id.* at 679-80. If our de novo review reveals that Graves failed to satisfy her burden or Appellants proved their affirmative defense, we should uphold the suit's dismissal. *Id.*

**Step One: Application of the TCPA.**

We begin with the first step of the TCPA, whether Graves' lawsuit comes within the Act. We focus on the extent to which the factual bases of a challenged "legal action" constitute expression within the TCPA's definitions of the "exercise of" the "right of free speech," "right of association," or "right to petition." *Sloat v. Rathbun,* 513 S.W.3d 500, 503 (Tex. App.—Austin 2015, pet. dism'd).

Under the statute's broadly-worded text, the "exercise of the right of free speech "means a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). "Communication" is defined by the Act as "includ[ing] the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1). The definition encompasses both public and private communications[4] and reaches "[a]lmost every imaginable form of communication, in any medium." *Adams*

---

[4] *See Lippincott v. Whisenhunt,* 462 S.W.3d 507, 509 (Tex. 2015)

5

*v. Starside Custom Builders, LLC,* 547 S.W.3d 890, 894 (Tex. 2018). That is because under the applicable version of the Act, a "matter of public concern" has been defined to "include[] an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7).

The Act defines the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(2).

In the first step, Appellees possess the burden to establish by a preponderance of the evidence that Graves' suit was based on, related to, or is in response to their exercise of free speech and freedom of association rights. Even though the evidence is sparce regarding what was communicated, it shows that Matshes and Andrews met with Lubbock County officials (including more than one assistant district attorney "or" the human resources director) regarding Graves and her role within the medical examiner's office. Graves further alleges in her pleadings that Andrews and Matshes "induc[ed] Lubbock County to fire Plaintiff because she reported her concerns about potentially illegal activity within the Medical Examiner's Office to such authorities." To "induce" is "[t]o lead on to some action, condition, belief, etc., as by persuasion or argument; to prevail on; to incite; to persuade." WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 933 (2d ed. 1983). The evidence, taken as a whole, permits the conclusion that Matshes and Andrews allegedly made a statement to Lubbock County regarding Graves' "leaks" that brought

6

about Graves' termination. We conclude the record sufficiently establishes a communication concerning Graves between Matshes and Andrews and Lubbock County.

Secondly, we find that the "exercise of free speech," as defined by the Act, was made in connection with a matter of public concern. Overarching Graves' pleadings is the theme that Appellees' complaints to Lubbock County officials were in retaliation for her reports of "suspicious and potentially illegal conduct" by Andrews and Matshes, and caused her termination from employment. Also found in Appellees' evidence are statements regarding the role of the medical examiner's office in investigating into the causes and manners of death, including their application in criminal investigations, and that such confidential information was "being inappropriately and/or illegally disclosed." We hold that these important issues are matters of public concern and that Appellees' communications were in connection with these issues. *See Coleman*, 512 S.W.3d at 897, 900 (holding that communications serving as basis for terminating plaintiff from employment were matters of public concern because alleged omissions by plaintiff were "in connection with" "issue[s] related to" environmental, health, safety, and economic concerns); *Lippincott*, 462 S.W.3d at 510 (holding that private emails by physicians claiming nurse anesthetist falsified records, violated sterile protocol policy, improperly administered narcotics, and failed to provide adequate coverage of medical cases regarded matters of public concern under TCPA's reach). Therefore, without regard to whether Appellees were acting improperly, we hold that the free speech provisions of the TCPA applies. Because the TCPA applies in connection with the exercise of the right of free speech, we do not consider whether Graves' lawsuit is based on, related to, or in

7

response to Matshes's and Andrews's exercise of the right of association. TEX. R. APP. P. 47.1.

**Step Two: Graves' Prima Facie Case**

Because Appellees satisfied their burden of showing Graves' lawsuit comes under the TCPA, the burden shifted to Graves to prove "by clear and specific evidence a prima facie case for each essential element" of her cause of action for tortious interference with existing contract. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). A prima facie case consists of "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky,* 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding) (citation omitted). It is the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* (citation omitted); *Batra,* 562 S.W.3d at 707 n.10. This effort requires "element-by-element, claim-by-claim exactitude." *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.,* 520 S.W.3d 191, 206 (Tex. App.—Austin 2017, pet. dism'd).

The elements of a cause of action of tortious interference with an existing contract are: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex. 2000). Fundamental to proving "interference" is the requirement to prove a breach of contract, as a third party cannot be liable for inducing the contracting party to do what it had a legal right to do in the agreement. *See ACS Inv'rs v. McLaughlin,*

943 S.W.2d 426, 431 (Tex. 1997); *John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*, 17 S.W.3d 721, 730 (Tex. App.—Austin 2000, pet. denied).

Critically here, the evidence is undisputed that Graves was an at-will employee of the county. If Graves' employment could be terminated for any reason due to her at-will relationship with Lubbock County, the county's reason for its decision is irrelevant. *See Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 683 n.6 (Tex. 2017). Graves needed to point the district court to evidence of a binding obligation the county breached on account of the Appellees' alleged acts. *See Juliette Fowler Homes, Inc. v. Welch Assocs.*, 793 S.W.2d 660, 667 (Tex. 1990), *superseded by statute on other grounds as stated in Prop. Tax Assocs., Inc. v. Staffeldt,* 800 S.W.2d 349, 350 & n.1 (Tex. App.—El Paso 1990, writ denied); *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.—Houston [14th Dist.] 2011, pet denied).[5]  Because she failed to present evidence of a breached contractual obligation, she cannot show that Appellees' alleged interference is cognizable as a tortious act.

Moreover, even if Graves was not required to prove Lubbock County breached its contract with her, she failed to present evidence that the county's decision to fire her was proximately caused by Appellee's alleged acts of interference. Graves merely reasons that the proximity in time between Appellees' communications and her termination should satisfy her burden of proof. But Graves suffers from the fallacy of *post hoc ergo propter hoc*, that is, an assumption that Appellees' communications with the county caused her

---

[5] *But cf. Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 688 (Tex. 1989) (recognizing cause of action for tortious interference with at-will employment contract).

termination simply because it occurred first.  She fails to present sufficient evidence to carry her burden of proof.  *See Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010).

## Conclusion

We overrule Graves' appellate issue and affirm the judgment of the trial court.


Lawrence M. Doss
Justice