

| | | |
|---|---|---|
| LARRY CHAMBERS AND ABIE WOLF, | § | No. 08-18-00213-CV |
| | § | |
| Appellants, | § | Appeal from the |
| | § | County Court at Law Number Three |
| v. | § | of El Paso County, Texas |
| JUAN CARLOS GARAY, | § | (TC# 2018DCV1553) |
| Appellee. | § | |

# **O P I N I O N**

This appeal is one part of a multi-case saga stemming from the disputed ownership of a motor home. After Appellants Abie Wolf and Larry Chambers lost at trial in their quest to assert ownership over the subject recreational vehicle, they turned their attention to their adversaries' attorney, Appellee Juan Carlos Garay, who successfully obtained ownership of the motorhome for his clients and judgment against Appellants for a sizeable figure. When Appellants sued Garay for allegedly fraudulent actions he took in representing his clients against them, Garay moved to dismiss their claim under the Texas Citizens Participation Act. The trial court granted Garay's motion to dismiss, and Appellants filed this appeal.

## **BACKGROUND**[1]

On or about May 14, 2012, Garry and Bonnie Starr's motor home broke down at the U.S. Customs and Border Protection checkpoint in Sierra Blanca and was towed to Van Horn. The

---

[1] Many of the facts underlying this case are disputed by the parties. The facts provided in this section are largely for context and their veracity, or lack thereof, does not affect the outcome of our decision in this appeal.

Starrs contacted Appellant Abie Wolf to tow the motor home from Van Horn to El Paso. Wolf towed the motor home to his business, Mack H. Auto, and the Starrs allegedly paid Wolf for the towing. When the Starrs attempted to retrieve the motor home a short time thereafter, Wolf refused to release it. Wolf claimed certain repairs and storage fees remained unpaid.

On October 1, 2012, Wolf applied for a Texas certificate of title to the motor home, apparently based on a storage lien filed by Mack H. Auto on August 31, 2012. Title in Texas was issued to Wolf on October 18, 2012. Wolf filed a second application for title on or about October 24, 2012, this time as "Mack H. Auto El Paso TX DBA Abie Wolf," and listed Appellant Larry Chambers as the first lienholder. Wolf listed Chambers as first lienholder because Chambers loaned Wolf $5,000.00, which the motor home was apparently meant to secure.

### Garay's representation of the Starrs

Prior to applying for title of the motor home in Texas, on June 20, 2012, Wolf filed suit against Garry Starr in small claims court for $9,775.00, which he claims was owed for "storage and mechanic work and towing[.]" The small claims lawsuit was dismissed without prejudice for lack of subject matter jurisdiction regarding the amount in controversy. The Starrs subsequently sued "Abie Wolf d/b/a Mac H Auto General Mechanic and Repair" and Chambers in state district court over ownership of the motor home. Wolf filed a separate lawsuit against the Starrs on behalf of Mack H. Auto and as next friend of his daughter for an assault allegedly stemming from possession of the motor home. Garay represented the Starrs in all three lawsuits, which we will refer to generally here as the Litigation.

Following a jury trial, the Starrs obtained a six-figure judgment against Wolf in the state district court lawsuit.[2] Wolf then filed the lawsuit against Garay which forms the subject of this

---

[2] Wolf appealed the state court judgment against him to this Court, styled *Abraham Wolf v. Garry Starr and Bonnie Starr*, No. 08-14-00236-CV.

appeal, alleging common law fraud against Garay for activities conducted by Garay during the course of his representation of the Starrs in the Litigation.

### *Procedural History*

Appellants filed their Original Petition on April 25, 2018. On July 30, 2018, Appellants filed a First Amended Petition. On August 1, 2018, Appellee filed his original answer and a Motion to Dismiss pursuant to the Texas Citizens Participation Act (TCPA). By order of the trial court, Garay's motion was scheduled for hearing on September 28, 2018. After Appellants requested a continuance of the hearing, it was reset for October 29, 2018.

For reasons not apparent in the record, Judge Javier Alvarez of the County Court at Law Number Three recused himself from the case and Regional Presiding Judge Stephen Ables appointed Judge Dick Alcala, Senior District Judge of the 340th District Court of Texas, to the case. Judge Ables made the assignment on September 4, 2018; however, notice of the assignment was not filed with the district clerk until October 25, 2018.

### DISCUSSION

Appellants raise the following issues on appeal:

1. The trial court erred by not filing Findings of Fact and Conclusions of Law;

2. The trial court erred by neither granting nor denying Appellants' Motion for New Trial;

3. The trial court erred when Judge Alcala "did not file his Order from the Sixth Administrative Judicial Region to get Jurisdiction" before entering orders in County Court at Law Number Three; and

4. The trial court erred in granting Garay's motion to dismiss pursuant to TCPA.

Before we address the merits of the trial court's ruling on Garay's motion to dismiss, we will consider the ancillary issues raised by Appellants in their first three issues.

### *Issue One:*

3

***Trial court erred by not filing Findings of Fact and Conclusions of Law***

In their first point of error, Appellants claim the trial court erred by not filing Findings of Fact and Conclusions of Law. We find Appellants failed to properly preserve this issue for appeal and overrule Appellant's first issue.

When a party who files a motion to dismiss under the TCPA requests findings of fact from the trial court "on whether suit was filed to deter or prevent the movant from exercising constitutional rights and whether suit was filed for an improper purpose," the trial court is obliged to do so. *Batra v. Covenant Health System*, 562 S.W.3d 696, 705 (Tex.App.--Amarillo 2018, pet. denied)(citing TEX.CIV.PRAC.&REM. CODE ANN. § 27.007(a)); *see also Greer v. Abraham*, 489 S.W.3d 440, 443 (Tex. 2016). However, the TCPA does *not* obligate the trial court to act accordingly when findings of fact are requested by *the non-movant. Batra*, 562 S.W.3d at 705 (TCPA is silent on trial court's duty to file findings of fact when requested by the non-movant, and thus imposes no similar duty as that owed to the movant).

Here, Appellants, the non-movants, requested Findings of Fact and Conclusions of Law pursuant to Rule 296 on November 13, 2018, which were forwarded to the trial court two days later. *See* TEX.R.CIV.P. 296. However, when the trial court did not file the requested findings within thirty days, Appellants failed to file a notice of past due filings, which are required under Rule 297. *See* TEX.R.CIV.P. 297. In order to preserve an issue regarding the trial court's findings on appeal, a party must file a past-due reminder with the trial court pursuant to Rule 297. *See Ad Villarai, LLC v. Chan II Pak*, 519 S.W.3d 132, 137 (Tex. 2017)(*citing Las Vegas Pecan & Cattle Co. v. Zavala County*, 682 S.W.2d 254, 255-56 (Tex. 1984)). Thus, as our sister court in Amarillo did in *Batra*, we decline to address whether the trial court should have made findings of fact and conclusions of law as requested by the non-movant under the TCPA because Appellants failed to preserve the issue on appeal. *See Batra*, 562 S.W.3d at 705. Appellant's first issue is overruled.

4

***Issue Two:***
***Trial court erred by neither granting nor denying Motion for New Trial.***

In their second issue, Appellants argue the trial court erred by neither granting nor denying their motion for new trial. Their brief on this issue cites to an Ohio Supreme Court case from 1984 and a United States Supreme Court case from 1943, neither of which address motions for new trial.[3]

Where a trial court fails to enter a written, signed order on a motion for new trial, the motion is overruled by operation of law after seventy-five days. TEX.R.CIV.P. 329b(c). Furthermore, Appellants did not, at any time, request a hearing on their motion for new trial. Accordingly, the trial court did not abuse its discretion by failing to rule on Appellants' motion before it was overruled by operation of law after the expiration of seventy-five days. *See Felt v. Comerica Bank*, 401 S.W.3d 802, 808 (Tex.App.—Houston [14th Dist.] 2013, no pet.)("When a motion for new trial requires the judge to exercise his discretion, the judge must have an opportunity to exercise that discretion before that discretion can be abused.")(*citing Shamrock Roofing Supply, Inc. v. Mercantile Nat'l Bank at Dall.*, 703 S.W.2d 356, 357-58 (Tex.App.—Dallas 1985, no writ).

We overrule Appellants' second issue.

***Issue Three:***
***Trial court erred when Judge Alcala "did not file his Order from the Sixth Administrative Judicial Region to get Jurisdiction" before entering an order in County Court at Law Number Three.***

In their third issue, Appellants claim Judge Alcala did not have jurisdiction to enter orders setting Garay's motion to dismiss for hearing because the order assigning him to preside over the case was not filed with the district clerk until October 25, 2018, some weeks after entering two separate orders setting Garay's motion for hearing.

---

[3] *See Seasons Coal Co., Inc. v. City of Cleveland*, 461 N.E.2d 1273 (Ohio 1984); *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943).

Appellants cite no legal authority supporting the claim that Judge Alcala did not "have jurisdiction" over the case, and we are aware of none supporting their contention. The order of assignment entered by Sixth Administrative Judicial Region Presiding Judge Stephen Ables explicitly states Judge Alcala was assigned to preside over "Cause Number 2018DCV1553, styled *LARRY CHAMBERS AND ABIE WOLF V. JUAN CARLOS GARAY* from this date until plenary power has expired[.]" The order is dated September 4, 2018, more than a week before Judge Alcala entered the first order setting a hearing on Garay's motion. Nothing in the assignment order, nor in Section 74.056 of the Texas Government Code, which grants presiding judges of an administrative region authority to assign cases to other judges within the region, requires the order to be filed in order for it to be effective or to confer authority upon an assigned judge. *See* TEX.GOV'T CODE ANN. § 74.056.

Additionally, as Garay discusses in his brief, the first time Appellants complained about Judge Alcala's appointment to the case or any action he took prior to the order of his assignment being filed occurred on October 29, 2018. Objections to an assigned judge must be made within seven days of having actual notice of the assignment. TEX.GOV'T CODE ANN. § 74.053(c). Appellants admit in their motion for continuance, filed September 21, 2018, as of said date, they were aware of Judge Alcala's assignment to the case. In the same document, Appellants admit to receiving a notice of hearing from Judge Alcala on September 13, 2018. Accordingly, Appellants had until September 20, 2018, to file an objection to Judge Alcala's assignment to the case, which was not filed until October 29, 2018.

Further, a party's objection to the visiting judge must be the first matter presented to the judge for a ruling. *Chandler v. Chandler*, 991 S.W.2d 367, 383 (Tex.App.--El Paso 1999, pet. denied), *disapproved on other grounds*, *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d

6

136, 139 (Tex. 2019). Failure to raise an objection to the judge in a timely manner waives a litigant's right to strike the assignment of a visiting judge. *Id.* Here, Appellants requested a continuance from Judge Alcala on the hearing on Appellee's motion to dismiss set for September 28, 2018, which Judge Alcala granted. They then attended the hearing on Garay's motion to dismiss on October 29, 2018, and did not raise any objection to Judge Alcala presiding over the proceedings.

We find Appellants waived their right to object to Judge Alcala's appointment. We further find Judge Alcala acted within the authority granted to him to preside over the case effective September 4, 2018. Appellants' third issue is overruled.

### Issues Four, Five, Six, and Seven:
### Trial court erred in granting motion to dismiss pursuant to TCPA.

We now to turn to the merits of Garay's motion to dismiss and the trial court's granting of said motion, which Appellants raise in their fourth, fifth, sixth, and seventh issues on appeal.

In their fourth issue, Appellants assert, "[t]he trial court erred when they did not look at the Fraud on the Title that was issued on 02/07/2013 and it does not comply with the rules the Defendant filed to discuss under the Texas Citizen Participation Act." Section 27.005(c) of the Texas Civil Practices and Remedies Code states, "The court may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX.CIV.PRAC.&REM.CODE ANN. § 27.005(c). We thus interpret Appellants' issue to mean the trial court erred in granting the motion to dismiss because they provided sufficient evidence of a prima facie case for their fraud claim.

In their fifth issue, Appellants assert the trial court erred by only discussing the TCPA at the hearing, but their lawsuit "has all the elements for fraud." We understand this issue to be essentially identical to their fourth issue.

In their sixth issue, Appellants argue the trial court erred by not considering the response they filed to Garay's motion to dismiss, and the evidence appended thereto.

In their seventh issue, Appellants claim the trial court erred in granting Garay's motion to dismiss.

Since all involve whether each party satisfied his respective burden under Section 27.005 of the TCPA, and whether the trial court erred in some aspect of ruling on Garay's motion, we will examine Appellants' four remaining issues in tandem.

**Dismissal Pursuant to the TCPA**

The purpose of the TCPA "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."[4] TEX.CIV.PRAC.&REM.CODE ANN. § 27.002. Where a "legal action is based on, relates to, or is in response to a party's exercise" of one of the enumerated rights, the aggrieved party may seek dismissal of the action by filing a motion to dismiss. *Id.* at § 27.003(a).

### A. Standard of Review

A trial court's ruling on a motion to dismiss under the TCPA is reviewed *de novo*, as is its determination on the statutory interpretation of the TCPA. *See Darnell v. Rogers*, 588 S.W.3d 295, 300 (Tex.App.--El Paso 2019, no pet.)(*citing Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019)); *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). Construing a statute

---

[4] All references to the TCPA are to the version that applies to this dispute. The TCPA was amended in 2019. Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 TEX.GEN.LAWS 684. These amendments do not apply to this case. *See id.* §§ 11–12, 2019 TEX.GEN.LAWS at 687 (providing that amendments apply to actions filed on or after September 1, 2019). Because the amendments were not made retroactive, the prior definition applies to this appeal. *See Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC.*, 591 S.W.3d 127, 129 (Tex. 2019)("The prior version of the statute continues [ ] to control cases filed before September 1, 2019.").

requires courts to "determine and give effect to the Legislature's intent[,]" "which necessarily includes any enacted statements of policy or purpose[.]" *Youngkin*, 546 S.W.3d at 680. Determining legislative intent also requires examination of a statute as a whole, rather than narrow analysis of specific portions. *Id.*

"The court first examines whether the defendant invoked the [Act] by showing, by a preponderance of the evidence, that the plaintiff's claim 'is based on, relates to, or is in response to the [Defendant's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association.'" *Darnell*, 588 S.W.3d at 300 *(citing* TEX.CIV.PRAC.&REM.CODE ANN. § 27.005(b)). If the movant meets its burden, the court then looks to whether the plaintiff has "establishe[d] by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX.CIV.PRAC.&REM.CODE ANN. § 27.005(c); *see Darnell*, 588 S.W.3d at 300-01. If the nonmovant fails to meet its burden under the second step, its claim must be dismissed. TEX.CIV.PRAC.&REM.CODE ANN. § 27.005(b). If the nonmovant meets its burden under the second step, the third step still requires dismissal if the movant demonstrates by a preponderance of evidence "each essential element of a valid defense to the nonmovant's claim." TEX.CIV.PRAC.&REM.CODE ANN. § 27.005(d).

In deciding the applicability of the Act and, if necessary, whether the nonmovant has met its burden of producing clear and specific evidence of each essential element of its claim, a court is required to look to the pleadings and all affidavits, both supportive and opposing, which state the facts supporting the liability or defense at issue. TEX.CIV.PRAC.&REM.CODE ANN. § 27.006(a). Further, if available, a court may consider evidence produced by either party in support of its position, although neither party is required to produce evidence beyond its pleadings and affidavits if doing so can satisfy its burden under the statute. *See In re Lipsky*, 460 S.W.3d 579, 590-91 (Tex.

9

2015); *S&S Emergency Training Solutions, Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018).

### B. Applicability of the TCPA

Garay asserts Appellants' fraud lawsuit is a legal action based on, related to, or in response to exercise of his right to petition, and thus falls within the purview of the TCPA. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 27.003(a). Under the TCPA, a "legal action" can be a lawsuit or a single cause of action, among other things. TEX.CIV.PRAC.&REM.CODE ANN. § 27.001(6); *see Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 892 (Tex. 2018). It is apparent Appellants' lawsuit constitutes a "legal action" as defined by the TCPA. The primary question we must address is whether it is based on, related to, or in response to Garay's exercise of his right of petition.

The TCPA defines the "[e]xercise of the right to petition," in pertinent part, as "a communication in or pertaining to … a judicial proceeding." TEX.CIV.PRAC.&REM.CODE ANN. § 27.001(4)(A)(i). "Communication," under the TCPA, is defined as "the making or submitting of a statement or document in any form or medium . . . ." *Id.* at § 27.001(1).

Garay argues Appellants' lawsuit against him is based on communications in or pertaining to a judicial proceeding because all of the complained-of conduct involves action taken by him in the course and scope of his representation of the Starrs. In examining his motion to dismiss and the evidence attached to it, Garay does not specifically discuss what communication or conduct he undertook which forms the basis of Appellants' claims against him and thus invokes the TCPA. However, the allegations set forth by Appellants in their First Amended Petition and response to Garay's motion to dismiss, which we accept as judicial admissions, give enough information about Garay's alleged actions to implicate the TCPA. *See Houston First American Sav. v. Musick*, 650 S.W.2d 764, 769 (Tex. 1983)("The facts alleged or admitted in the live pleadings of a party are

accepted as true by the court and jury and are binding on the pleader."). For example, Appellants claim in their First Amended Petition, "Defendant Juan Carlos Garay fabricated that Order to make it look like it was rendered on November 19, 2012 and signed on December 6, 2012. This conduct on the part of Defendant Juan Carlos Garay induced Plaintiff's [sic] Larry Chambers and Abie Wolf to loose [sic] their Motor Home[,] the one Abie Wolf had the Title for . . . ."[5]

Additionally, in their response opposing Garay's Motion to Dismiss, Appellants state the following allegations as forming the basis of their fraud complaints:

- Garay was "tr[ying] to show that he was doing his job as somebody representing Bonnie Starr and Garry Starr in litigation with [Appellants]," when in fact he "conspir[ed] and us[ed] his connections [to get] a Judgment against [Wolf] for over $500,000.00 from the 243rd District Court[.]"

- Garay "mislead [sic] the jury" by presenting a New Mexico title to the mobile home at issue when the correct title, according to Appellants, was issued by the State of Texas. Appellants posit Garay was aware the correct title to the motor home was in the registry of the court, but instead presented a duplicate New Mexico title as evidence to the jury in the underlying litigation. Appellants argue a letter from Garay to Wolf's attorney in the underlying litigation, concerning the title in his possession, confirms Garay committed fraud.

- Garay committed fraud in representing the Starrs in the small claims court case Wolf brought against them when he filed a dismissal of the case due to the amount in controversy exceeding jurisdictional limits.

---

[5] The allegations in Appellants' Original Petition give a clearer picture about the nature of their claims against Garay and state a fraud cause of action against him. However, Appellants' Amended Petition supersedes all prior petitions and we are limited to examining only those claims in live pleadings. *See Encore Enterprises, Inc. v. Borderplex Realty Trust*, 581 S.W.3d 347, 362 (Tex.App.--El Paso 2018, no pet.).

11

- Garay committed fraud by filing the Starr's lawsuit against Appellants in state district court after having it dismissed in small claims court.

- Wolf claims he suffered personal injuries after Garay filed "false motions one after the other" in the underlying litigation, which he believes contributed to Judge Luis Aguilar holding him in contempt and putting him in jail, during which time he suffered a stroke.

- Appellants allege "Garay filed witness experts unlawfully" in the underlying litigation, who testified Wolf destroyed the subject motor home and contributed to him losing ownership of the motor home at trial.

Garay relies primarily upon the Texas Supreme Court's decision in *Youngkin*, and we find the facts of the instant case are analogous. There, Youngkin represented his clients in a property dispute against Hines. *Youngkin*, 546 S.W.3d at 678. Youngkin's clients settled their case with Hines, but Youngkin's execution of the settlement terms, which included certain property transfers, left Hines with less than he believed he was entitled pursuant to the terms of the settlement agreement. *Id.* at 678-79. Hines ultimately sued Youngkin, Youngkin's clients, and a third-party trustee involved in the property transfers, for fraud. *Id.* at 679. Against Youngkin specifically, Hines alleged he entered a Rule 11 agreement into the record at trial knowing his clients never intended to comply with their obligations thereunder, helped his clients avoid complying with the terms of the Rule 11 agreement, and assisted the trustee in his assertion of ownership over a portion of the property at issue. *Id.*

Youngkin invoked the TCPA in a motion to dismiss, arguing his reading the Rule 11 agreement into the trial court's record was an exercise of his right to petition as the TCPA defines it, and formed the basis for Hines's claims against him. *Id.* Further, he raised attorney immunity as an affirmative defense. *Id.* The trial court denied his motion to dismiss, which Youngkin

12

appealed. *Id.* The court of appeals affirmed the denial, holding the TCPA *did* apply to his claims, but Hines made a prima facie showing of each element of his claims, and Youngkin failed to adequately prove his affirmative defense of attorney immunity. *Id.* The Texas Supreme Court first analyzed whether Youngkin had adequately shown by a preponderance of the evidence that Hines's legal action was based on Youngkin's exercise of his right to petition. *Youngkin,* 546 S.W.3d at 680. Youngkin argued the "expansive statutory definition" of the right to petition under the TCPA brought Hines's claims within its purview. *Id.* Hines countered that an attorney speaking on behalf of a client in court was not an exercise of the *attorney's* right to petition, and therefore did not implicate the TCPA. *Id.* In substituting the statutory definitions for their respective defined terms, the Texas Supreme Court determined "the TCPA applies to a legal action against a party that is based on, related to, or in response to the party's making or submitting of a statement or document in or pertaining to a judicial proceeding." *Id.* Further, in examining the "context of the [TCPA] as a whole[,]" the Texas Supreme Court found because it "explicitly acknowledges that the [TCPA] is intended to safeguard the constitutional rights of speech, petition, and association[,]" there was no conflict between the "plain meaning of the definition of the exercise of the right to petition and the statute's express purpose." *Youngkin,* 546 S.W.3d at 681. The justices refuted Hines's proposition that Youngkin's statements in court as an attorney are not protected by the First Amendment's right to petition and thus do not invoke the TCPA. *Id.* Reading the TCPA to mean as much would be antithetical to the explicit text of the statute. *Id.*

Here, Appellants' allegations against Garay include he conspired with the Starrs to obtain judgment against Wolf for over $500,000, he misled the jury at trial by presenting a New Mexico title to the mobile home as evidence of the Starrs' ownership, he committed fraud in seeking dismissal of the small claims court case, he committed fraud by filing a lawsuit on behalf of the

13

Starrs against Appellants in state court, and he filed a number of "false motions" in the state district court litigation between the Starrs and the Appellants. We find these claims to be factually analogous to the facts alleged against Youngkin. Specifically, Hines alleged Youngkin assisted his clients in obtaining the Rule 11 settlement agreement, which Youngkin read into the record at court, knowing his clients did not intend to comply with their obligations thereunder. *Youngkin,* 546 S.W.3d at 678-79. Moreover, Hines alleged Youngkin helped his clients avoid compliance with the terms of the Rule 11 agreement, and assisted the third-party trustee in his assertion of ownership over a portion of the property at issue. *Id.* at 679. Both *Youngkin* and the instant case involve allegations of fraud and conspiracy brought by an adverse non-client against an attorney for actions he took in representing his client. Moreover, just as Hines's case against Youngkin centered on a document, the Rule 11 Agreement, and its presentation by Youngkin in court, so too does Appellants' case against Garay center on Garay's allegedly-fraudulent procurement of title to the mobile home and his presentation of the title as evidence in the trial between the Starrs and the Appellants. The facts put forth by Appellants against Garay plainly constitute "a legal action against a party that is based on, related to, or in response to the party's making or submitting of a statement or document in or pertaining to a judicial proceeding." *Youngkin,* 546 S.W.3d at 680. Other allegations against Garay further implicate the TCPA, such as complaints about Garay filing for dismissal of the small claims court case, filing the state court case for the Starrs, and filing "false motions" in the state court case. Finally, as the Texas Supreme Court determined in *Youngkin*, applying the TCPA to the facts of this case supports one of the stated purposes of the TCPA to safeguard the constitutional right to petition.

Because the pleadings and affidavits alone satisfy Garay's burden of proof under the TCPA, we need not look to extrinsic evidence for further support of dismissal. *See*

Tex.Civ.Prac.&Rem.Code Ann. § 27.006(a); *see also In re Lipsky*, 460 S.W.3d at 590-591; *S&S Emergency Training Solutions, Inc.*, 564 S.W.3d at 847.

C. **Garay's Entitlement to Dismissal**

Having determined the TCPA applies to Appellants' claims against Garay, the burden shifts to Appellants to show a prima facie case of each essential element of their claims by clear and specific evidence. *See Youngkin*, 546 S.W.3d at 681. Even if Appellants were so able, Garay is entitled to dismissal if he can prove his attorney immunity defense by a preponderance of the evidence. *Id.* Thus, as the Texas Supreme Court did in *Youngkin*, we assume without deciding that Appellants satisfied their burden, but nevertheless find Garay is entitled to dismissal having proven his pleaded affirmative defense. *Id.*

"The [attorney-immunity] defense exists to promote 'loyal, faithful, and aggressive representation' by attorneys, which it achieves, essentially, by removing the fear of personal liability [to non-clients]." *Youngkin*, 546 S.W.3d at 682 (*citing Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015)). Alleged misconduct by an attorney in the course of representing his client *may* be actionable by his or her client in a malpractice claim or sanctionable as an ethics violation. *See id.* But for an attorney to be liable to a non-client for alleged wrongdoing, the act must fall into a narrow category of exceptions to the defense, such as "participation in a fraudulent business scheme with a client, knowingly helping a client with a fraudulent transfer to avoid paying a judgment, theft of goods or services on a client's behalf, [or] assaulting opposing counsel during trial." *Youngkin,* 546 S.W.3d at 682-83, (*citing Cantey Hanger, LLP*, 467 S.W.3d at 482-483). The burden of proving attorney immunity is on the attorney asserting it. *Id.* at 683.

The *Youngkin* court found Youngkin met his burden of proof on the defense of attorney immunity. *Id.* Relying on its decision in *Cantey Hanger, LLP v. Byrd*, the Texas Supreme Court

reiterated, "an attorney may be liable to nonclients only for conduct outside the scope of his [or her] representation of his [or her] client or for conduct foreign to the duties of a lawyer." *Youngkin*, 546 S.W.3d at 681, (*citing Cantey Hanger, LLP*, 467 S.W.3d at 481). It is not the alleged impropriety of the act that is important, but rather the focus is on the type of conduct at issue and whether it was undertaken in the scope of the attorney's representation for his or her client. *Id.,* (*citing Cantey Hanger, LLP*, 467 S.W.3d at 482-83). Even where the alleged conduct was "fraudulent or otherwise wrongful[,]" "a lawyer is no more susceptible to liability" to a non-client. *Id.,* (*citing Cantey Hanger, LLP*, 467 S.W.3d at 483). Despite Hines's characterization of Youngkin's activity as fraudulent, the alleged conduct at issue was admittedly on behalf of Youngkin's client and thus "directly within the scope of his representation of his clients[.]" *Id.* at 682. Accordingly, the Texas Supreme Court held Youngkin satisfied his burden of proving the affirmative defense of attorney immunity, and thus was entitled to dismissal under the TCPA.

As set forth in the previous section, Appellants' allegations against Garay include he conspired with the Starrs to obtain judgment in their favor against Wolf for over $500,000.00, he misled the jury at trial by presenting a New Mexico title to the mobile home as evidence of the Starrs' ownership, he committed fraud in seeking a dismissal of the small claims court case, he committed fraud by filing a lawsuit on behalf of the Starrs against Appellants in state court, and he filed a number of "false motions" in the state district court litigation between the Starrs and the Appellants. Both *Youngkin* and the instant case involve allegations of fraud and conspiracy brought by an adverse non-client against an attorney for actions he took in representing his client. *Youngkin,* 546 S.W.3d at 681-82. As the Texas Supreme Court has made clear, "'acts taken and communications made to facilitate the rendition of legal services to [the client][]'" are protected conduct under the attorney-immunity defense. *Id.,* (*citing Cantey Hanger*, 467 S.W.3d at

16

484)(*citing Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex.App.--Houston [1st Dist.] 2005, pet. denied)).

Despite Appellants claiming Garay's actions were fraudulent, none of the acts alleged falls into the narrow exception to the attorney-immunity defense set forth in *Cantey Hanger*. *See Cantey Hanger*, 467 S.W.3d at 482-83. Appellants argue in their response to Garay's motion to dismiss that Garay violated Texas Penal Code section 32.34, which deals with fraudulent transfer of vehicles. *See* TEX.PENAL CODE ANN. § 32.34. These allegations are not included in their First Amended Petition, nor are any facts to support such allegations, and thus it would be improper for us to rely upon them as properly pleaded claims. *See Stoner v. Thompson*, 578 S.W.2d 679, 682-83 (Tex. 1979). However, even if these allegations were properly pleaded, the Texas Penal Code does not create a private right of action for the alleged victim. *Hamilton v. Pechacek*, 319 S.W.3d 801, 813 (Tex.App.--Fort Worth 2010, no pet.)(*citing Brown v. De La Cruz*, 156 S.W.3d 560, 567 (Tex. 2004); *Spurlock v. Johnson*, 94 S.W.3d 655, 658 (Tex.App.--San Antonio 2002, no pet.)). Accordingly, because the complained-of acts were allegedly undertaken in furtherance of his representation of his clients, Garay is shielded from civil liability to Appellants. *Youngkin.* 546 S.W.3d at 682 ("[W]e must look beyond [the plaintiff's] characterizations of activity as fraudulent and conspiratorial and focus on the conduct at issue.").

We hold the trial court correctly determined the TCPA applies to Appellants' cause of action against Garay. Assuming without deciding Appellants satisfied their burden of proof to make a prima facie showing of their fraud claim, we nevertheless hold the trial court correctly found Garay proved by a preponderance of the evidence his attorney-immunity defense. Appellants' lawsuit was therefore properly dismissed under the TCPA.

Appellants' remaining four issues are overruled.

17

## CONCLUSION

We hold as follows:

(1) Because they failed to file a notice of past due findings, Appellants failed to properly preserve their first issue for appeal;

(2) Appellants' failure to request a hearing on their motion for new trial, resulting in it being overruled by operation of law after seventy-five days, is not an abuse of discretion;

(3) Appellants waived their right to object to Judge Alcala's appointment, and Judge Alcala acted within the authority granted to him to preside over the case effective September 4, 2018; and

(4) Appellants' lawsuit was properly dismissed under the TCPA.

Having overruled each of Appellants' seven issues on appeal, the judgment of the trial court is affirmed.

August 7, 2020

YVONNE T. RODRIGUEZ, Justice

Before Rodriguez, J., Palafox, J., and Yanez, Senior Justice
Yanez, Senior Justice (Sitting by Assignment)