

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00122-CV

_____

UATP MANAGEMENT, LLC, Appellant

V.

LEAP OF FAITH ADVENTURES, LLC, Appellee

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 017-300796-18

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

## I.  Introduction

Appellant UATP Management, LLC sued Appellee Leap of Faith Adventures, LLP for breach of contract, and Leap of Faith counterclaimed for breach of contract, tortious interference with contract, tortious interference with business relations, conversion, theft by computer under Texas Civil Practice and Remedies Code Chapter 143 (the Harmful Access to Computer Act), theft of trade secrets (TUTSA), quantum meruit, and a declaratory judgment.[1]

UATP filed a Texas Citizens Participation Act (TCPA) motion to dismiss Leap of Faith's tortious interference, harmful access, and TUTSA claims, and the trial court denied the motion as to the tortious interference and harmful access claims but granted the motion on the TUTSA claim.[2]  In four issues, UATP appeals.  *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.003, 27.008, 51.014(a)(12).  We affirm in part and reverse in part.

---

[1]On the same day that Leap of Faith filed its counterclaim against UATP, Leap of Faith also sought a temporary restraining order (TRO) and temporary and permanent injunctive relief with regard to its claims.  The trial court granted the TRO, which was extended seven times by the parties' agreement pending the hearing on Leap of Faith's application for temporary injunction.

[2]A TUTSA exemption under the TCPA became effective September 1, 2019, but this lawsuit falls under the prior statute.  *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 9, 11–12, 2019 Tex. Gen. Laws 684, 687 (codified as Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(5)).

## II. Background

UATP sells franchises for Urban Air, a type of indoor-park facility offering activities such as trampolines, ropes courses, zip lines, climbing walls, and other indoor entertainment. The franchise agreements provide that all equipment and attractions provided in an Urban Air facility must be installed by a UATP-approved installation company. Leap of Faith was a UATP-approved installation company.

In 2016, UATP and Leap of Faith agreed to pool resources to provide installation services to new franchisees. Each side characterizes the agreement differently. UATP describes it as a rebate agreement, whereas Leap of Faith describes it as a profit-sharing venture. But both agree that as a part of their agreement, UATP was to furnish "back office support" for Leap of Faith's business, including an email system for Leap of Faith's use. And both sides agree that under this arrangement, UATP was to receive 70% of the profits for the installation services provided to new franchisees by Leap of Faith.

Within two years, the parties became dissatisfied with each other and their arrangement. Various accusations were made, and litigation ensued on July 9, 2018.[3]

---

[3]Because the parties' lawsuit was filed before the TCPA amendments' effective date of September 1, 2019, it is governed by the prior version of the TCPA, and our citations refer to that version. We note that whether old law or new, TCPA's purpose remains the same: "to identify and summarily dispose of lawsuits designed to chill First Amendment rights, but not to dismiss meritorious lawsuits." *Van Der Linden v. Khan*, 535 S.W.3d 179, 188 (Tex. App.—Fort Worth 2017, pet. denied).

UATP sought dismissal of Leap of Faith's harmful access, tortious interference, and TUTSA counterclaims pursuant to the TCPA.

After a hearing on the motion, the trial court signed an order dismissing the TUTSA claim but denying the motion to dismiss as to the harmful access and tortious interference claims, and this interlocutory appeal followed.

## III. Discussion

In its first three issues, UATP complains that the trial court erred by denying the motion, arguing that Leap of Faith's harmful access and tortious interference claims fall under the TCPA, that the TCPA's "commercial speech" exemption does not apply to those claims, and that Leap of Faith failed to establish by clear and specific evidence a prima facie case for each essential element of each of those claims.

## A. TCPA Standard of Review

We review de novo a trial court's ruling on a TCPA motion. *Beving v. Beadles*, 563 S.W.3d 399, 404 (Tex. App.—Fort Worth 2018, pet. denied).

The TCPA involves a burden-shifting analysis. *See Ghrist v. MBH Real Estate LLC*, No. 02-17-00411-CV, 2018 WL 3060331, at *1 (Tex. App.—Fort Worth June 21, 2018, no pet.) (mem. op.). Under this analysis, UATP first had to show by a preponderance of the evidence that Leap of Faith's claims at issue were based on, related to, or were in response to—as set out in UATP's motion—UATP's exercise of

4

the right of free speech or the right of association.[4]  *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b); *Ghrist*, 2018 WL 3060331, at *1.  If UATP satisfied this burden, then to avoid dismissal, Leap of Faith had to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question."  *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *Ghrist*, 2018 WL 3060331, at *1.  And finally, if Leap of Faith met its burden, then the burden would shift back to UATP to establish "by a preponderance of the evidence each essential element of a valid defense to [Leap of Faith's] claim[s]."  *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d).

## B.  TCPA Evidence

In determining whether the TCPA applies, we first look to the plaintiff's allegations.  When it is clear from the plaintiff's pleadings that the action is covered by the TCPA, the defendant need show no more.  *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) ("The basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations.").  In addition to the pleadings, evidence that may be considered in relation to a TCPA motion to dismiss includes "supporting and opposing affidavits stating the facts on which the liability or defense is based."  Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a).  The TCPA further provides for "specified and limited discovery" relevant to the motion.  *Id.* § 27.006(b).

---

[4]UATP did not raise the right to petition in its TCPA motion.  *Cf.* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)(2) (now Section 27.005(b)(1)(B)).

5

Citing a case from a sister court, Leap of Faith argues—in response to UATP's fourth issue[5]—that live testimony can also be considered. *Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 707 (Tex. App.—Amarillo 2018, pet. denied). We need not decide whether live testimony could have been considered here because no live witnesses were called during the dismissal hearing. What the parties refer to as "live testimony" was actually prior testimony from the temporary injunction hearing that had immediately preceded the dismissal hearing. *See* Tex. R. Evid. 801(d) (defining hearsay as "a statement that the declarant does not make while testifying at the *current . . . hearing*" (emphasis added)), 802 (providing, generally, that hearsay is inadmissible), 804(b)(1)(A) (providing an exception to the hearsay bar for testimony given by a witness at a different hearing, but only "if the declarant is unavailable as a witness").

UATP objected to the trial court's consideration of the prior testimony, Leap of Faith made no showing of unavailability, and the trial court never ruled on the testimony's admissibility for purposes of the dismissal hearing. *See* Tex. R. Evid. 802 (providing that inadmissible hearsay "admitted without objection" is probative evidence). Because the trial court did not admit the testimony or exhibits from the prior temporary injunction hearing into evidence, we will not consider them, and we overrule UATP's fourth issue as moot.

---

[5]In its fourth issue, UATP argues that the trial court abused its discretion by overruling UATP's objections to Leap of Faith's evidence when the TCPA specifically allows the court to consider pleadings and affidavits but does not mention live testimony.

## C. UATP's Rights of Free Speech and Free Association Under the TCPA

In its first issue, UATP contends that Leap of Faith's claims for harmful access by a computer, tortious interference with contract, and tortious interference with business relationships were "based on, related to, or in response to . . . UATP's exercise of its rights of free speech or association, and thus within the scope of the TCPA."

Under the TCPA, the exercise of both the right to free speech and the right of association starts with a communication. With regard to the exercise of the right of free speech, the TCPA requires that the communication be one that is "made in connection with a matter of public concern."[6] Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3). For the right of association, the communication must be one that is made "between individuals who join together to collectively express, promote, pursue, or defend common interests." *Id.* § 27.001(2).

### 1. Leap of Faith's Harmful Access Claim

UATP begins its argument by pointing out that Leap of Faith's harmful access claim[7] is "literally a claim to recover communications (i.e., emails)." Thus, it reasons,

---

[6]A "matter of public concern" prior to the 2019 amendments to the TCPA included an issue related to health or safety; environmental, economic, or community well-being; the government; a public official or public figure; or a good, product, or service in the marketplace." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7)(A)–(E).

[7]*See generally* Tex. Civ. Prac. & Rem. Code Ann. § 143.001 (providing civil remedies for various computer crimes found in Chapter 33 of the Texas Penal Code); Tex. Penal Code Ann. § 33.02(b-1) (stating that a person commits an offense if—with

Leap of Faith's contention that UATP wrongfully terminated access to Leap of Faith's email accounts was a cause of action "related to 'communications,' as that term is broadly defined and used in the TCPA."

We find this argument dubious. Taking the logic of such argument to an extreme, the TCPA would be implicated in a claim for assault by hitting someone with a rolled-up newspaper or a conversion claim for theft of a comic book because newspapers and comic books are "communications." Nevertheless, even assuming there is some merit to UATP's position, UATP still failed to meet its burden to show that the TCPA applies to this cause of action.

In its counterclaim, Leap of Faith complains that UATP blocked Leap of Faith "from access to its own email accounts," but UATP offered no evidence, let alone proof by a preponderance of the evidence, that Leap of Faith's claim for denial of access to its own email accounts relates in any way to *UATP*'s exercise of its right of free speech or of association. *See id.* § 27.003(a) ("If a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech . . . or right of association, *that party* may file a motion to dismiss the legal action." (emphasis added)), § 27.005(b) (requiring the movant to show "by a preponderance of the evidence" that the legal action is based on, relates to, or is in response to the movant's exercise of the right of free speech, the right to petition, or the right of association). Because UATP

the intent to defraud or harm another or to alter, damage, or delete property—he knowingly accesses a computer, computer network, or computer system without the owner's effective consent).

8

failed to satisfy its initial burden to prove that Leap of Faith's harmful access claim falls within the scope of the TCPA as a protected communication *by UATP*, the trial court did not err by denying UATP's motion to dismiss Leap of Faith's harmful access claim. Accordingly, we overrule this portion of UATP's first issue and do not reach UATP's remaining two issues as to the harmful access claim. *See* Tex. R. App. P. 47.1.

### 2. Leap of Faith's Tortious Interference Claims

Broadly speaking, as to the two remaining causes of action—tortious interference with existing contracts and tortious interference with prospective business relations—Leap of Faith concedes that "both claims admittedly implicate UATP's right to speak and associate."[8] But Leap of Faith argues that the TCPA's commercial speech exemption applies to these two causes of action to prevent their dismissal. In its second issue, UATP challenges Leap of Faith's TCPA exemption argument.

The commercial speech exemption provides that causes of action are exempt from the TCPA if they are brought "against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or . . . a commercial transaction in which the

---

[8]In a subsequent portion of its brief, Leap of Faith asserts that UATP offered no proof that its communications were undertaken as a matter of public concern but does not contradict its concession regarding UATP's right of association. Accordingly, we do not reach Leap of Faith's public concern argument. *See* Tex. R. App. P. 47.1.

intended audience is an actual or potential buyer or customer." Tex. Civ. Prac. & Rem. Code Ann. § 27.010(b). Leap of Faith bore the burden to show that the commercial speech exemption applies to its claims. *See Ray v. Fikes*, No. 02-19-00232-CV, 2019 WL 6606170, at *4 (Tex. App.—Fort Worth Dec. 5, 2019, pet. denied) (mem. op.).

In its pleadings, Leap of Faith complained that UATP interfered[9] by

1. stealing Leap of Faith's vehicles and tools that were needed to perform its contractual obligations;

2. blocking Leap of Faith's access to email accounts; disrupting communications between Leap of Faith and its employees, suppliers, and contracting buyers; and creating fictitious email accounts in an attempt to "impersonate persons associated with [Leap of Faith]";

3. contacting buyers with false representations and instructing them to re-route payments to UATP, thus diverting funds belonging to Leap of Faith;

4. contacting Leap of Faith employees and inducing them through false representations to leave their positions at Leap of Faith and go to work for UATP; and

5. contacting suppliers and "inducing them not to do business with [Leap of Faith]."

We will take up each of these claims in turn.

### a. Stealing Leap of Faith's vehicles and tools

In their briefs, both sides appear to abandon TCPA arguments as to this claim. UATP does not argue that this claim involves a communication that falls within the

---

[9]In its response to UATP's motion, Leap of Faith did not specifically identify separate conduct that it alleged interfered with prospective business relations.

TCPA, and Leap of Faith does not contend that any involved communication is exempted as commercial speech. Thus, as to Leap of Faith's claim involving theft of vehicles and tools, we overrule this portion of UATP's first and second issues and do not reach UATP's remaining issue as to this claim. *See* Tex. R. App. P. 47.1.

### b. Blocking access to email accounts, disrupting communications, impersonating Leap of Faith personnel, and making false representations to divert Leap of Faith's funds

Because these allegations involve communications or conduct aimed at both Leap of Faith's and UATP's buyers or customers, on their face, they appear to implicate the commercial speech exemption. Leap of Faith brought these claims against UATP, an entity "primarily engaged in the business of selling or leasing goods or services," i.e., indoor-park-facility franchises. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(b). And the "statement[s] or conduct ar[ose] out of the sale or lease of goods [or] services," i.e., matters related to the equipment and attractions by a UATP-approved installation company—whether Leap of Faith or the joint enterprise between UATP and Leap of Faith —that were featured at the indoor-park facilities. *See id.* Finally, these allegations involved "commercial transaction[s] in which the intended audience [was] an actual or potential buyer or customer." *See id.* Accordingly, because these allegations fall squarely within the commercial speech exemption, the trial court did not err by denying UATP's motion to dismiss as to these portions of Leap of Faith's tortious interference claims. We overrule this portion of UATP's first and second issues.

11

### c. Poaching Leap of Faith's employees and alienating Leap of Faith's suppliers through false representations

For the two remaining allegations to fall within the commercial speech exemption, Leap of Faith had to show that the communications' intended audience was an actual or potential buyer or customer. *See id.* But on the face of its pleadings, Leap of Faith complains of communication aimed not at Leap of Faith's actual or potential buyers or customers but rather at its employees and suppliers. Because Leap of Faith failed to offer any evidence that the employees or suppliers were potential buyers or customers, Leap of Faith failed to meet its burden to show that the commercial speech exemption applies to these allegations. We sustain UATP's second issue as to this portion of Leap of Faith's tortious interference claims.

## D. Prima Facie Case

Having failed to meet its burden to show that the commercial speech exemption applies to the part of its tortious interference claims with regard to Leap of Faith's employees and suppliers, Leap of Faith carried a further burden to establish by clear and specific evidence a prima facie case for each essential element of those claims. *See id.* § 27.005(c). In UATP's third issue, it argues that Leap of Faith failed to do so. As will be discussed below, we agree.

To make its prima facie case for tortious interference with contract, Leap of Faith was required to provide clear and specific evidence (1) of the existence of a valid contract subject to interference, (2) that UATP willfully and intentionally interfered

12

with that contract, (3) that the interference proximately caused Leap of Faith's injury, and (4) that Leap of Faith incurred actual damage or loss. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017). For its tortious-interference-with-prospective-business-relations claim, Leap of Faith's burden was to produce clear and specific evidence: (1) that there was a reasonable probability that Leap of Faith would have entered into a business relationship with a third party, (2) that UATP either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of its interference, (3) that UATP's interference was independently tortious or unlawful, (4) that UATP's interference proximately caused Leap of Faith's injury, and (5) that Leap of Faith suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

We begin by focusing on "actual damage or loss," a required element for both causes of action. With regard to Leap of Faith's claim against UATP for inducing employees to leave their positions at Leap of Faith and go to work for UATP, Leap of Faith offered the affidavit testimony of its owner, Garth Price, who averred,

> In one day, July 24, 2018, approximately 26 employees left the employ of [Leap of Faith] and moved to UATP, which was extremely disruptive of [Leap of Faith's] build schedule and made it impossible for [Leap of Faith] to complete all the projects it had in the pipeline and as set forth in Exhibits 13 and 14 attached hereto[10] . . . . As set forth in

---

[10]Exhibits 13 and 14 consist of a list of park names and locations under the headings, "Urban Air stole these signed agreements from Leap of Faith," and "Park

13

my Affidavit, each one of these employees represents a big investment of time and money for [Leap of Faith], which investment UATP has effectively seized for itself . . . . I have run various businesses over the years and others at [Leap of Faith] have likewise run businesses over the years. Based on that experience, my opinion as informed by others at [Leap of Faith] is that part of the cost to [Leap of Faith] of UATP's taking [Leap of Faith's] employees separate and apart from the loss of the Commercial Sale Agreements is over a million dollars.

To meet its burden to show clear and specific evidence of damages, Leap of Faith was required to provide evidence of economic damages amounting to more than mere "general averments of direct economic losses and lost profits." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (orig. proceeding). That is, Leap of Faith's evidence had to illustrate with some specific facts how UATP's conduct actually caused it economic loss. *See id.*

Leap of Faith relied on *S & S Emergency Training Solutions, Inc. v. Elliott* to argue to the trial court that it did not need to provide direct evidence of damages to meet its burden to present a prima facie case of damages by clear and specific evidence. 564 S.W.3d 843 (Tex. 2018). In *Elliott*, EMTS—a paramedic education consortium—sued its former director, claiming that her defamatory statements had caused it economic damage. *Id.* at 845–47. In response to the former director's TCPA motion to dismiss, EMTS filed an affidavit showing that (1) EMTS was required to enter into a particular consortium agreement to be accredited and provide training courses; (2) under the consortium agreement, EMTS had conducted approximately 10 training classes for 30

locations where Leap of Faith performed work on the parks and expected to sign a contract," respectively.

14

students who each paid $4,950 in tuition; (3) the consortium contract was terminated because of the former director's statements; and (4) because the contract was terminated, EMTS could no longer provide training courses. *Id.* at 848. Additionally, the former director admitted that prior to her departure from EMTS, the company was "running smooth[ly] and [was] profitable." *Id.* Because the evidence went beyond demonstrating simple loss of revenue and actually showed that the training classes had been profitable, the supreme court held that EMTS had met its prima facie burden of proof to show damages by clear and specific evidence. *Id.* at 849–50. Although EMTS did not provide an exact calculation of the lost profits, the court held that the company demonstrated that it lost "some specific, demonstrable profits." *Id.* at 848. Thus, EMTS provided sufficient proof that the revenues were "susceptible to calculation with reasonable certainty." *Id.* at 848–49 (noting that the record contained evidence of revenues before the director's statements were made, including "the number of classes it offered, and the approximate number of students enrolled in each class").

Relying on *Elliott*, Leap of Faith contends that as long as the evidence was "sufficient to allow a rational inference that some damages naturally flowed from the defendant's conduct," it met its burden to make a prima facie case on this element. *See id.* at 847. But unlike in *Elliott*, in which the record showed evidence of both revenue and profitability, here, Leap of Faith wholly failed to demonstrate that it suffered loss of "*some* specific demonstrable profits." *See id.* at 848. While "an exact

15

calculation of lost profits" was not required, Leap of Faith was still obliged to present evidence of lost revenues that were "susceptible to calculation with reasonable certainty" based on identifiable data. *See id.* Because Leap of Faith failed to do so, it did not meet its burden to provide clear and specific evidence to establish a prima facie case as to damages for its claim against UATP for inducing employees to leave their positions at Leap of Faith and go to work for UATP.

As for Leap of Faith's claim for contacting suppliers and inducing them not to do business with Leap of Faith, it also failed to meet its burden of providing clear and specific evidence of damages. In the record, three suppliers are identified: SkyRider, MJ Engineering, and Cheer.

With regard to SkyRider, Leap of Faith complained that UATP had falsely alleged that Leap of Faith owed $2 million to UATP and had violated a noncompete agreement with UATP and that UATP had threatened to sue SkyRider if it became affiliated with Leap of Faith. Although Price contended in his affidavit that these actions "alienated" SkyRider and predicted that SkyRider was "likely to stop doing business with [Leap of Faith]," Leap of Faith completely failed to articulate or provide any evidence as to any damages resulting from UATP's alleged interference.

As to MJ Engineering, Leap of Faith alleged that UATP "sought to wrongfully obtain Leap of Faith's proprietary engineering plans, attraction manuals, and other intellectual property," but except as to the Leap of Faith employees that were hired by

UATP, the record is completely devoid of any evidence that UATP was successful in its interference attempt or that such attempt caused any damage to Leap of Faith.

With regard to Leap of Faith's employees who were allegedly "lured away" from Leap of Faith by UATP, as UATP points out in its brief, the sole basis for Leap of Faith's interference action as it relates to MJ Engineering was that UATP sought to acquire Leap of Faith's trade secrets (developed by MJ Engineering) through its former employees. But the trial court dismissed Leap of Faith's TUTSA cause of action, and Leap of Faith has not challenged the dismissal of that action on appeal. Because TUTSA preempts any other "conflicting tort, restitutionary, and other law of the state providing civil remedies for misappropriation of a trade secret," *see* Tex. Civ. Prac. & Rem. Code Ann. § 134A.007(a), Leap of Faith cannot seek legal redress for theft of trade secrets by recasting it as an interference claim. *See Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 843 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.) (holding that because a breach-of-fiduciary-duty claim "duplicate[d]" the TUTSA allegations, TUTSA's preemption provision "preclude[d] the [] breach of fiduciary duty claim from serving as a basis for temporary injunctive relief"); *see also Title Source, Inc. v. HouseCanary, Inc.*, No. 04-19-00044-CV, 2020 WL 5027667, at *11 (Tex. App.—San Antonio Aug. 26, 2020, no pet. h.) (op. on reh'g) (noting that "[w]hen the gravamen of a common law claim duplicates a TUTSA claim, the common law claim is preempted").

Finally, with regard to interference and damages as to Cheer, the only evidence in the record is contained in Price's supplemental affidavit, in which he averred,

> Since I signed my Affidavit, we have discovered that UATP has contacted another supplier, Cheer. As a result of that contact, Cheer has expressed reluctance at doing business with [Leap of Faith]. As such, if Cheer does not do business with [Leap of Faith], [Leap of Faith] will lose at least one contract on which it is currently working and that will be the first time [Leap of Faith] has failed to perform. Losing that contract will profoundly damage the business of [Leap of Faith], which has grown its business based on its reliability and honesty, the reputation for both of which will be tarnished unless UATP is restrained from interfering with [Leap of Faith]'s relationship with Cheer. Further, UATP has manipulated the Cheer Chinese workers' schedules, which has delayed at least one project, thereby putting that contract in jeopardy.

Aside from failing to meet the standard set forth in *Elliott* to at least present evidence of damages that were "susceptible to calculation with reasonable certainty," 564 S.W.3d at 848–49, based on identifiable data, the entire damage evidence as to Cheer is speculative. At most, the affidavit proves that the supplier "expressed reluctance" at doing business and that "profound damage" would occur only *if* the supplier chose not to do business with Leap of Faith. There is no evidence in this record of what path Cheer chose.

Consequently, as to Leap of Faith's claim against UATP for interfering with Sky Rider, MJ Engineering, and Cheer, Leap of Faith utterly failed to establish by clear and specific evidence a prima facie case as to an essential element of its claim, i.e., damages. Because Leap of Faith did not meet this burden, the trial court erred by denying UATP's motion to dismiss as to these two tortious interference claims.

Accordingly, we sustain UATP's third issue as to Leap of Faith's tortious interference claims related to employees and suppliers.

## IV. Conclusion

Having sustained portions of UATP's first three issues, we reverse in part the trial court's order denying UATP's TCPA motion, and we render judgment dismissing Leap of Faith's tortious interference claims for inducing Leap of Faith employees to leave their employment at Leap of Faith and go to work for UATP and for contacting suppliers and inducing them not to do business with Leap of Faith. We remand the case as to these two claims for the trial court to consider court costs and attorney's fees under Civil Practice and Remedies Code Section 27.009. Tex. Civ. Prac. & Rem. Code Ann. § 27.009.

As to all remaining claims not dismissed by the trial court, we affirm the trial court's denial of UATP's motion to dismiss.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: October 15, 2020

19