**Affirmed and Memorandum Opinion filed January 12, 2023.**



In The

# Fourteenth Court of Appeals

## NO. 14-21-00733-CV

## ONCOLOGY-HEMATOLOGY CONSULTANTS D/B/A CCBD AND BARRY RUSSO, Appellants

## V.

## JACOB LOCKE, MD D/B/A JAY LOCKE MD PA, Appellee

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2021-28277**

## M E M O R A N D U M   O P I N I O N

Appellants Oncology-Hematology Consultants d/b/a CCBD ("CCBD") and Barry Russo appeal the trial court's order denying their motion to dismiss the claims of appellee Jacob Locke, MD d/b/a Jay Locke MD PA ("Dr. Locke") under the Texas

Citizens Participation Act ("TCPA").[1]  Of appellants' several issues, we need address only one—whether the TCPA applies to Dr. Locke's claims.

We hold that the TCPA does not apply to Dr. Locke's claims because they are not based on or in response to communications made in connection with a matter of public concern.  Regarding Dr. Locke's cross-issue, we further hold that the trial court did not abuse its discretion in denying his request for attorney's fees.

Accordingly, we affirm the trial court's order.

## Background

Dr. Locke is a licensed physician specializing in radiation oncology.  Through a medical staffing company, Medicus Locum Staffing Solutions, LLC ("Medicus"), Dr. Locke entered a locum tenens[2] assignment to perform radiation oncology services for Choice Cancer Center d/b/a Texas Oncology Care, PLLC ("Texas Oncology") from mid-July through October 2020.  Around the same time, CCBD through its CEO, Russo, was engaged in discussions with Texas Oncology to acquire its radiation oncology practice.  CCBD was interested in hiring a locum tenens radiation oncologist.  CCBD learned that Dr. Locke recently signed a locum tenens agreement with Texas Oncology for five days a week, but Texas Oncology did not need the doctor's services all five days.  Dr. Locke and CCBD negotiated a Professional Services Agreement ("PSA") whereby Locke agreed to provide services to CCBD on Tuesdays and Thursdays, while working the remainder of the week for Texas Oncology.  The PSA had an initial term from July 5, 2020 to August 28, 2020.

---

[1] Tex. Civ. Prac. & Rem. Code §§ 27.001-.011.

[2] "Locum tenens" means "one filling an office for a time or temporarily taking the place of another—used especially of a doctor or clergyman."  *See* "locum tenens," Merriam-Webster, https://www.merriam-webster.com/dictionary/locum%20tenens.

2

Dr. Locke discovered that Russo complained to Medicus that Dr. Locke was "double dipping" because he was paid through the Medicus locum tenens agreement for five days a week, while also being paid by CCBD for two of those days. Dr. Locke construed Russo's statement as an attempt to interfere with his Medicus agreement. According to Dr. Locke, however, Russo's complaint did not result in any change to the Medicus arrangement nor any withholding of payment by Medicus.

In late July 2020, Dr. Locke determined that it may be best to focus on the development of the practice at Texas Oncology. He also learned from Russo that CCBD no longer needed his services.[3] Texas Oncology, Russo, and Dr. Locke agreed that Dr. Locke would return to providing services five days a week at Texas Oncology. On July 31, 2020, CCBD and Dr. Locke terminated the PSA by mutual agreement.

Dr. Locke and Texas Oncology began negotiating a new agreement under which Dr. Locke would provide services to Texas Oncology either as a contractor or an employee. According to Dr. Locke, the contemplated agreement's finalization was delayed. During a conversation with Texas Oncology's senior vice-president, Greg Johnson, Dr. Locke was told that the agreement's execution was being held up by the legal department. Johnson confirmed that Dr. Locke's performance to date had been "exemplary in every respect."

When Dr. Locke pressed Johnson further about the delay in finalizing a new agreement, Johnson ultimately revealed that the "true cause of the delay was that Russo had told him that Dr. Locke would not be a 'good fit for the practice' and to interview other candidates." Neither Dr. Locke's petition nor his declaration

---

[3] Russo did not express any performance-related concerns to Dr. Locke.

attached to the TCPA response identify or allege any further communication by CCBD or Russo.

Ultimately, CCBD did not acquire Texas Oncology, and Texas Oncology did not enter into an employment agreement with Dr. Locke. Medicus terminated Dr. Locke's locum tenens agreement "for cause" in September 2020. According to Medicus, Dr. Locke's performance had been deemed "unprofessional" by Johnson and Texas Oncology.

In May 2021, Dr. Locke sued Texas Oncology, Johnson, CCBD, and Russo. As to CCBD and Russo, Dr. Locke asserted claims for: (1) tortious interference with two contracts: his locum tenens agreement and his initial agreement with Texas Oncology; (2) tortious interference with the prospective contract with Texas Oncology that never materialized; and (3) slander, defamation, and defamation per se. According to the petition, Dr. Locke's tortious interference claims against CCBD and Russo are based on Russo's statement to Johnson that Dr. Locke was not a "good fit for the practice" and that Johnson should interview other candidates. Dr. Locke's defamation, slander, and defamation per se claims are based on Russo's "good fit" statement to Johnson as well as Russo's statement to Medicus that Dr. Locke was "double dipping."

CCBD and Russo filed a TCPA motion to dismiss, asserting that Dr. Locke's claims were based on or in response to their exercise of free speech about the provision of medical services, which is a matter of public concern. They contended that Dr. Locke could not present clear and specific prima facie evidence to support his claims and that Russo's statements about whether Dr. Locke was a "good fit" were protected by a common-law qualified privilege.

4

The parties filed an agreed motion for expedited limited discovery, which the trial court granted. The parties took the depositions of Dr. Locke and Russo and engaged in limited written discovery.

After the limited discovery was complete, Dr. Locke responded to the motion. He argued that the TCPA does not apply to his lawsuit because his claims are not based on or in response to communications made in connection with a matter of public concern. Specifically, Dr. Locke asserted that there was no connection between Russo's statement that Dr. Locke would not be a "good fit" for CCBD's practice and Dr. Locke's provision of medical services. Dr. Locke pointed to excerpts from Russo's deposition, in which Russo stated that he provided no details beyond Dr. Locke's lack of a "fit" with CCBD. Russo did not offer any opinions to anyone at Texas Oncology regarding Dr. Locke's abilities or qualifications as a physician, nor did Russo ever call into question the medical care that Dr. Locke provided to any patients that he saw at CCBD. Dr. Locke urged in the alternative that he established by clear and specific evidence a prima facie case for each element of his claims against Russo and CCBD. Finally, Dr. Locke contended he was entitled to court costs and attorney's fees because CCBD's and Russo's TCPA motion to dismiss was frivolous.

CCBD and Russo replied to Dr. Locke's response. They highlighted Russo's deposition testimony, in which he explained that Dr. Locke was not a good fit for CCBD because he lacked experience in performing certain medical procedures. CCBD and Russo also asserted that Dr. Locke failed to establish a prima facie case with clear and specific evidence for each of his claims.

The trial court conducted a short hearing on the TCPA motion. At the end of the hearing, the trial court denied the motion. The court did not award Dr. Locke attorney's fees.

5

CCBD and Russo appeal.

## Analysis

## A.    Applicable law and standard of review

The TCPA protects citizens who associate, petition, or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them.  *See In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding).  That protection comes in the form of a "special motion to dismiss . . . for any suit that appears to stifle the defendant's exercise of those rights."  *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018) (quotation omitted).

The TCPA establishes a three-step process for resolving a motion for expedited dismissal.  *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 691 (Tex. 2018) (per curiam).  As a threshold matter, the movant must demonstrate that the TCPA applies.  *See* Tex. Civ. Prac. & Rem. Code § 27.005(b).  To meet this burden, the movant must show by a preponderance of the evidence that the legal action is based on or is in response to the movant's exercise of one or more of the rights to associate, speak freely, and petition.  *Id.*  If the movant meets its initial burden, the burden then shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of its claim.  *Id.* § 27.005(c).  If the nonmovant satisfies that requirement, the burden shifts back to the movant to establish as a matter of law any valid affirmative defense.  *Id.* § 27.005(d).

Today's case involves the purported exercise of the right of free speech.  As defined in the TCPA, "exercise of the right of free speech" means "a communication made in connection with a matter of public concern."[4]  *Id.* § 27.001(3).  In turn, a

---

[4] The parties do not dispute that Russo's purported statements are communications under the TCPA.  *See id.* § 27.001(1).

6

"matter of public concern," includes a statement or activity regarding "a matter of political, social, or other interest to the community" or "a subject of concern to the public." *Id.* § 27.001(7)(B), (C). "To be a matter of public concern, a claim must have public relevance beyond the interests of the parties." *Morris v. Daniel*, 615 S.W.3d 571, 576 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *see also Navidea Biopharms., Inc. v. Capital Royalty Partners II, L.P.*, No. 14-18-00740-CV, 2020 WL 5087826, at *5 (Tex. App.—Houston [14th Dist.] Aug. 28, 2020, pet. denied) (mem. op.) ("*Creative Oil* disapproved of applying the TCPA's free-speech prong to claims affecting only the economic interests of the parties and others with an interest in the transaction." (internal quotations omitted)).

We review de novo whether the parties have met their respective TCPA burdens. *See Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 373 (Tex. 2019). We view the pleadings and the evidence in the light most favorable to the nonmovant. *See Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 29 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *Sanchez v. Striever*, 614 S.W.3d 233, 242-43 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

## B. The TCPA does not apply to Dr. Locke's legal action against CCBD and Russo.

Two alleged communications underpin all of Dr. Locke's claims against Russo and CCBD: Russo's statement to Johnson that Dr. Locke was not a "good fit" for CCBD's practice and Russo's statement to Medicus that Dr. Locke was "double-dipping." However, appellants focus only on the "good fit" statement to argue that the TCPA applies to Dr. Locke's claims. They contend that that this statement was in connection with a matter of public concern because it relates to Dr. Locke's provision of health care services. *See, e.g.*, *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 510 (Tex. 2015) ("We have previously acknowledged that the provision

7

of medical services by a health care professional constitutes a matter of public concern."). Appellants did not assert in the trial court that the TCPA applies to any claims that are based on the "double-dipping" communication. Thus, they did not show by a preponderance of the evidence that the TCPA applies to the defamation claims based on the double-dipping statement, and the dismissal of those claims under the TCPA was properly denied. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b). Because appellants do not rely on that alleged communication as a basis for dismissal under the TCPA, we limit our TCPA free speech analysis to the "good fit" communication.

Russo's challenged communication occurred in connection with the radiation oncology services Dr. Locke provided to CCBD under a contract. Communications involving only the parties' private pecuniary interests will not necessarily trigger the TCPA's protections as to a party's purported exercise of free speech rights. *See, e.g.*, *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 137 (Tex. 2019) ("A private contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of these words."); *Ridge Petroleum, Inc. v. Energy Ops, LLC*, 611 S.W.3d 36, 47 (Tex. App.—El Paso 2020, no pet.) (statements referenced in plaintiff's petition related only to the amount of royalties owed to a private party pursuant to a wastewater disposal agreement, and therefore did not relate to a matter of public concern within the meaning of the TCPA); *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 476-77 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (en banc) (internal communications among parties regarding plaintiff's trade secrets had no public relevance beyond the pecuniary interests of the private parties and were therefore not connected to a matter of public concern within the meaning of the TCPA); *Tex. Custom Wine Works, LLC v. Talcott*, 598 S.W.3d 380, 387 (Tex. App.—Amarillo

2020, no pet.) ("[T]o trigger the TCPA's protections, [the communication] must involve more than a handful of individuals communicating about a private business deal."); *Forget About It, Inc. v. BioTE Med., LLC*, 585 S.W.3d 59, 67-68 (Tex. App.—Dallas 2019, pet. denied) ("[A] private communication made in connection with a business dispute is not a matter of public concern under the TCPA."); *Caliber Oil & Gas, LLC v. Midland Visions 2000*, 591 S.W.3d 226, 239-40 (Tex. App.— Eastland 2019, no pet.) (communications that related only to the "parties' personal financial well-being" were not made in connection with a matter of public concern within the meaning of the TCPA).

But even communications made in a private forum will fall under the TCPA when they "involve[e] a public subject." *See Lippincott*, 462 S.W.3d at 508; *see also ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 901 (Tex. 2017) (per curiam). Under the TCPA, a matter of public concern could be any matter of "political, social, or other interest to the community" or just a "subject of concern to the public." Tex. Civ. Prac. & Rem. Code § 27.001(7)(B), (C). As appellants emphasize, the Supreme Court of Texas has held that one area of public concern covered by the TCPA involves communications in connection with the provision of medical services by a health care professional. *Lippincott*, 462 S.W.3d at 510.

In *Lippincott*, the communications at issue included claims that Whisenhunt, a nurse anesthetist, "'failed to provide adequate coverage for pediatric cases,' administered a 'different narcotic than was ordered prior to pre-op or patient consent being completed,' falsified a scrub tech record on multiple occasions, and violated the company's sterile protocol policy." *Id.* at 510. The Supreme Court of Texas explained that such communications relating to whether Whisenhunt properly provided medical services to patients were made in connection with a matter of public concern, and thus the TCPA applied to Whisenhunt's claims. *Id.* at 509-10.

9

The court held that communications about a private employment matter in the context of providing medical services related to health and safety, and, therefore, the communications qualified as a matter of public concern under the TCPA. *Id.*

Thus, the TCPA can be triggered when private communications involve health or safety concerns that have "public relevance beyond the pecuniary interests of the private parties involved." *Creative Oil & Gas, LLC*, 591 S.W.3d at 136 (citing *Lippincott*, 462 S.W.3d at 509-10). In keeping with *Lippincott*, intermediate appellate courts have agreed that when a health care provider engages in communications relevant to an employee's ability to safely and competently provide medical services to patients, such communications relate to health and safety issues impacting the public and constitute matters of public concern. *See, e.g., id.* at 509-10; *see also Pisharodi v. Columbia Valley Healthcare Sys., L.P.*, 622 S.W.3d 74, 81-82 (Tex. App.—Corpus Christi 2020, no pet.) (when a defendant's communications center on the plaintiff's "ability to provide competent medical services," the communications may be said to impact a matter of public concern); *Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 709 (Tex. App.—Amarillo 2018, pet. denied) (private communications relating to a physician's "handling of specific cases, his medical competence, and disciplinary action" were "matters of public concern"); *Memorial Hermann Health Sys. v. Khalil*, No. 01-16-00512-CV, 2017 WL 3389645, at *6 (Tex. App.—Houston [1st Dist.] Aug. 8, 2017, pet. denied) (mem. op. on reh'g) (communications criticizing physician's competence related to health and safety issues and were therefore made in connection with a matter of public concern).

In arguing that Russo's statement that Dr. Locke was not a "good fit" was made in connection with a matter of public concern, appellants rely heavily on *Lippincott*. They contend that Russo's communications about Dr. Locke were made

10

in connection with the provision of medical services because Russo believed that Dr. Locke did not have the level of experience the doctor had represented in their initial discussions. While Russo may have sincerely held that belief, his opinion was not alleged to have been communicated to Johnson, Medicus, or Dr. Locke. Russo's opinion of Dr. Locke's experience or qualifications is not mentioned anywhere in the petition. Rather, Dr. Locke's factual allegations supporting his claims assert no more than that Russo stated merely that Dr. Locke was not a "good fit" for CCBD. This communication is distinguishable from those at issue in *Lippincott* and like cases such as *Pisharodi*, *Batra*, and *Khalil*. A health care provider's statement that a doctor is not a "good fit" for the practice does not convey content or meaning sufficient to generate public relevance beyond the pecuniary interests of the private parties involved. *See Creative Oil & Gas, LLC*, 591 S.W.3d at 136.

The plaintiff's allegations are the "best, and all sufficient evidence of the nature" of the claims. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (internal quotations and citations omitted); *see also DOJO Bayhouse, LLC v. Pickford*, No. 14-20-00237-CV, 2021 WL 6050677, at *4 (Tex. App.—Houston [14th Dist.] Dec. 21, 2021, no pet.) (mem. op.). We do not ignore the factual predicate for the claims as set forth in the petition. *See Hersh*, 526 S.W.3d at 467. To the extent Russo believed that Dr. Locke was not a "good fit" because Dr. Locke had misrepresented his experience, Dr. Locke would not be in position to know that fact (and allege it in his petition) if it is not communicated to him, and there is no allegation or evidence that it ever was communicated to him or anyone else. Russo testified that he provided no details beyond Dr. Locke's lack of a "fit" with CCBD to both Johnson and the staffing company's representative. Russo did not offer any opinions to anyone at Texas Oncology regarding Dr. Locke's abilities or qualifications as a physician, nor did Russo ever call into question the medical care that Dr. Locke

11

provided to any patients that he saw at CCBD. Dr. Locke specifically alleged that Russo did not identify any performance related concerns and that he was given nothing but positive performance feedback from Johnson. Dr. Locke's claims cannot be based on or in response to a subjective belief held by Russo that was never communicated. *See DOJO Bayhouse*, 2021 WL 6050677, at \*5; *Sanchez*, 614 S.W.3d at 246. At this stage of the proceeding, we of course view Dr. Locke's petition in the light most favorable to him. *Sanchez*, 614 S.W.3d at 246; *Enter. Crude GP LLC v. Sealy Partners, LLC*, 614 S.W.3d 283, 294 (Tex. App.—Houston [14th Dist.] 2020, no pet.). Russo's opinion is not included in the substance of the communication alleged and is not part of the claims' factual predicate.

That a defendant operates in the health care field is not sufficient to demonstrate that every communication it makes about one of its workers—even health care workers—is in connection with a matter of public concern. *See U.S. Anesthesia Partners of Tex., P.A. v. Mahana*, 585 S.W.3d 625, 630-31 (Tex. App.—Dallas 2019, pet. denied) (recognizing that a private communication about an employee's alleged positive drug test or addiction was not a matter of public concern "merely because the employee happens to be a nurse"); *see also Clinical Pathology Labs., Inc. v. Polo*, 632 S.W.3d 35, 48 (Tex. App.—El Paso 2020, pet. denied) (holding that communications regarding a phlebotomist's absence from work and the decision to terminate the employee were not related to a public health concern, but rather to the parties' private employment dispute; hence, the TCPA was not implicated in employee's lawsuit). As the Dallas court of appeals stated, to construe the previous version of the TCPA to "denote that all private business discussions are a 'matter of public concern' if the business . . . is related to health or safety is a potentially absurd result that was not contemplated by the Legislature." *Erdner v. Highland Park Emergency Ctr., LLC*, 580 S.W.3d 269, 277 (Tex. App.—Dallas

2019, pet. denied). Instead, insofar as the provision of medical services is concerned, the focus must be on the communications themselves, and whether they were made in connection with a "health or safety issue." *Clinical Pathology Labs., Inc.*, 632 S.W.3d at 48; *see Saks & Co., LLC v. Li*, 653 S.W.3d 306, 316 (Tex. App.—Houston [14th Dist.] 2022, no pet.) ("To determine whether speech relates to a matter of public concern, courts consider the content, form, and context of the speech."); *Mahana*, 585 S.W.3d at 630-31. Communications do not become a matter of public concern simply based on the nature of the parties' business, and instead, the communications themselves must have "some relevance to issues beyond the interests of the parties to be considered matters of public concern under the TCPA." *Clinical Pathology Labs., Inc.*, 632 S.W.3d at 48 (internal quotations omitted); *see also Goldberg v. EMR (USA Holdings) Inc.*, 594 S.W.3d 818, 828 (Tex. App.— Dallas 2020, pet. denied) (court must focus on the communication itself to determine whether it was made in connection with a matter of public concern or whether it was "simply a communication between private parties of matters of purely private concern"); *Staff Care, Inc. v. Eskridge Enters., LLC*, No. 05-18-00732-CV, 2019 WL 2121116, at *4 (Tex. App.—Dallas May 15, 2019, no pet.) (mem. op.) (to determine whether the TCPA applies, a court "must look to the content of the communications themselves and not focus solely on the occupation of the speaker or the related industry").

Accordingly, we conclude that appellants failed to prove by a preponderance of the evidence that Russo engaged in any communications that could be considered a matter of public concern within the meaning of the TCPA. Therefore, the TCPA does not apply to Dr. Locke's claims at issue.

We overrule appellants' first issue. Our resolution of this issue makes it unnecessary to address their remaining issues. *See* Tex. R. App. P. 47.1.

13

## C. Attorney's fees

In a single cross-issue, Dr. Locke argues that the trial court erred by denying his request for attorney's fees because appellants' TCPA motion is frivolous. *See* Tex. Civ. Prac. & Rem. Code § 27.009(b) ("If the court finds that a motion to dismiss filed under this chapter is frivolous or solely intended to delay, the court may award court costs and reasonable attorney's fees to the responding party."). We review a trial court's decision to award attorney's fees under subsection 27.009(b) for an abuse of discretion. *Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 857 (Tex. App.—Austin 2018, pet. denied); *see also Navidea Biopharms., Inc.*, 2020 WL 5087826, at *6. A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without regard to guiding principles. *Sullivan*, 551 S.W.3d at 857; *see Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

"Frivolous" is not defined in the TCPA, but "the word's common understanding contemplates that a claim or motion will be considered frivolous if it has no basis in law or fact and lacks a legal basis or legal merit." *Sullivan*, 551 S.W.3d at 857 (internal quotations, citations omitted). That a TCPA motion to dismiss is ultimately denied is not sufficient, standing alone, to support a finding that the motion was frivolous. *Hay v. eCORP Int'l, LLC*, No. 14-20-00771-CV, 2022 WL 3592613, at *10 (Tex. App.—Houston [14th Dist.] Aug. 23, 2022, no pet.) (mem. op.). "A party seeking attorney's fees and costs bears the burden to put forth evidence regarding its right to the award, as well as the reasonableness and necessity of the amount." *Sullivan*, 551 S.W.3d at 857.

Dr. Locke's request for attorney's fees and costs was based on his argument that appellants' TCPA motion was frivolous because of the recent amendments to the act: "Defendants should have evaluated whether allegations claiming that Barry Russo stated Locke was 'not a good fit' for the practice were based on or in response

14

to Defendants' exercise of free speech.  As shown above, *given the changes to the TCPA made by 2019 amendments*, that answer is decidedly no." (Emphasis added).

Given the 2019 amendments to the TCPA and the lack of case law interpreting the amended statute, we cannot say that the trial court abused its discretion in determining that appellants' TCPA motion was not frivolous and declining to award attorney's fees to Dr. Locke.  *Cf., e.g.*, *Marrujo v. Wisenbaker Builder Servs., Inc.*, No. 01-19-0056-CV, 2020 WL 7062318, at \*12 (Tex. App.—Houston [1st Dist.] Dec. 3, 2020, no pet.) (mem. op.) (declining to hold that a TCPA motion was frivolous when the law was unclear at the time the motion was filed); *Keane Frac, LP v. SP Silica Sales, LLC*, 608 S.W.3d 416, 432 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (same).

Under these circumstances, we overrule Dr. Locke's cross-issue.

## Conclusion

Having overruled appellants' issues and Dr. Locke's cross-issue, we affirm the trial court's order denying appellants' TCPA motion to dismiss.

/s/     Kevin Jewell
         Justice

Panel consists of Justices Jewell, Bourliot, and Zimmerer.